# HENRY M. PATTERSON, Respondent, v. AMERI-CAN INSURANCE COMPANY, of Newark, N. J., Appellant.

## Kansas City Court of Appeals, October 6, 1913.

1. **FIRE INSURANCE: Vacancy: Waiver.** Where suit is based on a policy having a clause rendering the policy void if the house becomes vacant without the consent of the company, and the defense is that the house was vacant at the time of the fire, but the plaintiff's claim is that the vacancy clause was waived, that claim is established if it is shown that when the house became vacant the company was notified thereof and it failed to either cancel the policy and return the unearned premium or to show its consent by attaching to the policy a vacancy permit.

2. ———: ———: ———: **Amount of Recovery.** If, in such case, the company was notified of the vacancy before the fire, and it failed to attach a vacancy permit but waived the vacancy provision in the policy, then the amount of recovery is determined by the policy and not by the terms of the vacancy permit, since the latter never came into existence, and the suit is on a policy with the vacancy clause eliminated.

3. ———: **Vexatious Refusal to Pay: Penalty.** Where there were enough contradictions in plaintiff's statements to the company to cause a reasonable man to doubt his claim that he had, prior to the fire, notified the company's agent of the vacancy which fact was absolutely essential to his recovery, the company had a right to litigate the question whether he had or not, and should not be penalized for so doing.

4. ———: **Sufficiency of Evidence: Jury Question.** Whether plaintiff's evidence that he notified the company's agent of the vacancy before the fire is contradicted by his admitted correspondence showing that he did not know of the vacancy until the fire, involves in the last analysis a weighing of the testimony in order to determine whether the contradiction was the result of fallible memory, and, if so, when the truth was told, and since the question was passed upon in a former appeal it will be treated as having been adjudicated and the question will not be reopened.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

AFFIRMED (*conditionally*).

*Fyke & Snider* for appellant.

*Yates & Mastin* for respondent.

TRIMBLE, J.—For the second time this case is here on appeal by defendant. [See Patterson v. Insurance Co., 164 Mo. App. 157.] The suit is on a fire insurance policy covering a farmhouse. The policy contained a clause that, "If the building insured be or become vacant and unoccupied without the consent of the western manager of this company indorsed hereon, then this policy shall be null and void." There is no doubt but that the property became vacant some time, perhaps two months, before it burned on February 10, 1908.

At the first trial, considered on appeal in the 164th Mo. App., the defense was made that the house was vacant and no consent thereto or vacancy permit had been obtained, and the policy was, therefore, by its terms, null and void. To meet this defense plaintiff urged that *before* the vacancy occurred, he had an agreement with defendant's agent that, if the property became vacant at any time in the future, he would attach a vacancy permit, and therefore there was a waiver of the forfeiture in the policy as to vacancy without consent. On appeal, however, this court held that such agreement, *before* the vacancy, could have no effect because there can be no waiver of a forfeiture until after the ground of forfeiture has occurred, and remanded the case for a new trial, on the ground that, while plaintiff could not avoid the forfeiture because of such prior waiver, yet there was some evidence tending to show that plaintiff, *after* the vacancy and about three weeks before the fire, had notified the defendant's agent of the vacancy and requested him to issue and attach a vacancy permit, and if this were

true, defendant had, by failing to act, waived the forfeiture.

Upon a second trial this feature of the case was litigated and a verdict for plaintiff was returned for the full amount of the policy with interest and seventy-five dollars additional as ten per cent damages and a further sum of $112.50 as a reasonable attorneys' fee for vexatiously refusing to pay the amount due plaintiff.

Defendant contends that the case should be reversed because plaintiff's own testimony, and the conceded circumstances under which the notice and request are claimed by him to have been made, show that no notice was even given or request made. This contention requires an examination of the testimony.

Plaintiff was living in Oklahoma. The house in question was in Jackson county, Missouri, near Independence. Plaintiff had an agent at Independence, named Noland.

Plaintiff's claim that he notified Rider, defendant's agent, of the vacancy and to put a vacancy permit on the policy is based on his testimony that on January 21, 1908, he wrote Rider, defendant's agent, at Independence, Mo., as follows: "I have been informed that my house upon which I hold American Insurance policy has become vacant. Please see that vacancy permit is placed." Defendant's agent, Rider, denied ever receiving such a letter. Plaintiff introduced in evidence a pencil copy of such alleged letter, the defendant not producing the original on notice to do so. The testimony of plaintiff that he wrote such a letter on January 21, 1908, would not appear strange were it not for the fact that on February 13, 1908, three days after his house burned, he wrote to his agent, Noland, saying: "Yours of the 10th at hand saying that my house had burned down. Have you gotten any particulars in the case since writing? Now, Mr. Nowland, I want you to give me the two fol-

lowing points, namely, how long has the house been vacant, and have you had a vacancy permit on, or did you have a vacancy permit on when the house burned. Please write me these questions by return mail, and don't say a word to the insurance agent about this as it may cut a figure in the way of getting my insurance."

On March 15, 1908, plaintiff again wrote his agent, Noland, as follows:

"Regarding the burning of my house I hold an insurance policy for $750, of which I have been trying to adjust with the company. They have now turned my claim down and refuse to pay any part on the ground the house was vacant at the time of fire. Mr. Noland, this is rather a severe blow on a poor man like myself. Now what I wish to do is this, establish if possible more proof regarding the exact situation. Eventually I may be compelled to fight them in the courts as a last resort after all other means have failed, thereby making possible much trouble for us all. Now, Mr. Noland, I want you to assist me in this matter by trying to learn the true standing of the case as regards to a vacancy. Are you certain that there was nothing left in the way of furniture, a chair, table, stand, or other article in the building at the time of the fire, or at the time that you was there when you reported to me that the building was vacant? Such articles might establish in law an occupancy.

"Do you know where Mr. Green Allen, the former tenant is; try and find out so I can write him concerning the case. The insurance agent at Independence agreed to place vacancy permits on the house in case of vacancies. Suppose he must have neglected to do so. Kindly learn all you can about the case and report as early as possible."

Twelve days later, on March 27, 1908, plaintiff wrote Rider, the insurance agent, at Independence as follows:

"Yours of recent date was duly received, replying will state that adverse to your understanding, *I was not aware that the house in question was vacant until about the time the fire* occurred, this being the case along with circumstances as named in previous letter I am unable to see where I am at fault."

These letters were admitted by plaintiff to have been written by him, and he stated that he tried to give Rider the true state of facts.

It must be conceded by all candid minds that these letters, written by plaintiff after the fire, make his statement, that he wrote the letter of January 21, sound "mighty fishy" if a colloquialism may be permitted in a judicial opinion. On March 27, 1908, he wrote Rider, "I was not aware that the house in question was vacant until about the time the fire occurred." But now he claims that on January 21, 1908, he wrote the agent saying he had been informed the house was vacant and to put a vacancy permit on the policy. When did he tell the truth? Now or then? Did he tell it when he wrote the letter of March 27th and thought it would be of some help to him to claim ignorance of the fact it was vacant, or did he tell it when he has learned it is necessary in order to recover to know of it and notify the agent of the vacancy on January 21st? It is said, that however this may be, it is a question for the jury to say whether he told the truth the first time or the last. But is there not room for a third supposition, namely, that the truth was not told on either occasion? It seems to the writer that if the effect of a failure to secure a vacancy permit can be obviated, under such circumstances as are disclosed here, then the vacancy clause in any policy can be eliminated and rendered nugatory by the plaintiff calmly claiming that he notified the agent of the vacancy and relying confidently upon the verdict of a jury to do the rest. It may be that, strictly speaking, it is a question for the jury to say whether he told the truth the first,

second, or neither of said times and consequently we have no right to interfere. This question was considered in the former decision in passing on the defendant's demurrer to the evidence, and it was held that although plaintiff's evidence was "strongly contradicted" yet the evidence that the notice of vacancy was given was of sufficient substance to justify the resubmission of the case to the jury. [Patterson v. Ins. Co., 164 Mo. App. l. c. 164.] The evidence then was the same as now, and consequently, the question can be said to have been once adjudicated and settled. In view of this fact, and in view of the further fact that the jury is perhaps the judge of the question when the truth was told, if ever, and that, possibly there may be ground for attributing the inconsistency to mistake and the fallibility of human memory, and that two juries and two trial judges and three appellate judges have heretofore held with plaintiff in the matter, the writer is inclined to be reserved and conservative in his opinion on the point and to hold, not without some considerable worry and misgivings, that the obvious contradictions and inconsistencies between plaintiff's testimony and his admitted acts are not sufficient to entirely overthrow the evidence upon which plaintiff's case went to the jury.

Defendant contends also that if plaintiff is entitled to recover at all he is not entitled to recover more than three-fourths of the face of the policy, since the only vacancy permit in use by the company provided that, if the fire occurred while the property was vacant, the amount recovered should be only three-fourths of the loss. But this contention is based on a misconception of the grounds upon which plaintiff's right to recover is planted. The *policy* does not provide that if the loss occurs while the house is vacant, the amount due thereunder shall only be three-fourths of the loss. That appears only *in the vacancy permit.* The suit is not based on a policy with a vacancy per-

mit attached, but on a policy in which the clause rendering it void has been eliminated by waiver, leaving it a policy for the full amount insuring the house whether vacant or occupied. The case of Sullivan v. Ins. Co., 89 Mo. App. 106, is not in point because in that case the vacancy permit had become operative. In other words, the suit in that case was on a policy with a vacancy permit attached, and hence plaintiff could recover only according to the terms thereof. The suit is not based in any manner on the permit, neither are its terms set up as matter of defense by the pleadings. The sole issue was whether the policy was in force or had become void by reason of the vacancy, and that issue depended solely on whether the forfeiture had been waived. The condition in the policy as to the property being vacant can be waived the same as any other condition. [Clay v. Ins. Co., 25 S. E. 417.] If proper notice is given, the policy will remain in force until the insurer takes action to terminate the insurance. [2 Cooley's Briefs on Ins., 1657-8; Wakefield v. Ins. Co., 7 N. W. 647; Strunk v. Ins. Co., 28 Atl. 779.] The only place in which the reduction of one-fourth of the insurance appears is in the vacancy permit itself, not in the policy, and since the vacancy permit never came into existence at all, the reduction clause never came into existence. The policy was on the house for a certain amount of insurance with a clause rendering it null if the house became vacant without the consent of the company. When, as found by the jury, the company was notified on January 21, 1908, that the house was vacant, it had three alternatives, 1st, to immediately cancel the policy and return the unearned premium; 2nd, to consent to the vacancy and place a permit on the policy which by its terms would reduce the insurance one-fourth; 3rd, to waive the vacancy clause in the policy by making no objection and retaining the premium, thereby leaving the policy in force for the full amount with nothing

.in the policy concerning vacancy. According to the verdict, this is what was done. The amount of insurance due, therefore, is the amount of the policy.

In addition to the question of waiver the trial court submitted the question of vexatious refusal to pay the loss, and the jury, in addition to a finding of $959.12 due on the policy, assessed a penalty of seventy-five dollars and an attorney's fee of $112.50 under section 7068, Revised Statutes of Missouri 1909. In our opinion the record does not disclose any evidence to warrant the court in submitting the question of vexatious refusal to pay. It is true the whole question of vexatious delay is a question for the jury, as has been decided by Keller v. Insurance Co., 198 Mo. 440, but it is only so when from a general survey of all the facts and circumstances in the case an inference can be drawn that the refusal was unjustifiable and vexatious. [Keller v. Ins. Co., supra, l. c. 460, 461.] And while affirmative. proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty. [Blackwell v. Ins. Co., 80 Mo. App. 75.] In the first trial, plaintiff relied upon an oral agreement on the part of the agent that, if the house became vacant in the future he would attach a vacancy permit. This, defendant contended, was not valid and, on appeal, defendant's contention was upheld. A refusal to pay on this ground could not be held vexatious; and while plaintiff's claim that he wrote a letter to defendant's local agent notifying him of the vacancy has been upheld by the jury in the second trial, and a waiver of the vacancy clause has been thereby established. still, in view of the admitted correspondence of plaintiff con-

tradicting his claim of having written such letter, and the denial of the agent of having received it, the company had a right to litigate that question without being penalized for so doing. In other words, the facts and circumstances admitted by plaintiff are sufficient to give the company reasonable grounds for defending the suit and takes the element of vexatiousness out of its refusal to pay.

If, therefore, the plaintiff will, within fifteen days, file a remittitur of $187.50, being the aggregate amount of the penalty imposed and attorney's fee assessed, together with six per cent interest thereon from the date of the judgment, this cause will be affirmed, otherwise it will be reversed and the cause remanded. All concur.