FREDERICK D. BENNETT, by HARRIS N. BENNETT, his Guardian, Respondent, v. THE STANDARD ACCIDENT INSURANCE COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed January 3, 1922.

1. **INSURANCE: Accident Insurance: Evidence: Sufficiency.** In an action founded on an accident insurance policy defended on the ground that plaintiff's injuries resulted from an attempt to commit suicide, evidence *held* sufficient to uphold a judgment in favor of plaintiff.

2. **APPELLATE PRACTICE: Trial Theory: Adopted on Appeal.** Where an action founded on an accident insurance policy was tried on the theory that the misrepresentation statute (section 6142, Revised Statutes 1919) did not apply to the policy, the trial theory will be adopted by the appellate court.

3. **INSURANCE: Accident Insurance: Renewals: Warranties: Apply to Date Original Policy was Issued.** Where an accident insurance policy was renewed and a renewal receipt issued, wherein it was agreed that same was issued in consideration of the truthfulness at that date of the warranties in the original policy, one of which statements being to the effect that no policy of accident insurance theretofore issued to insured had ever been canceled or renewal thereof refused, the fact that a policy in another company had

209 M. A.—6

been canceled after the date of the original policy was not available as a defense, where the defendant in its answer made no claim of breach of warranty based on the contract of renewal, but its allegations in that regard related to breaches of warranty at the time the original policy was issued.

4. ———: ———: Warranties: Knowledge of Agent of Untruthfulness: Accepting and Retaining Premium: Waiver. If the agent of an accident insurance company knew that the insured's warranty was untrue and still issued the policy, accepted and retained the premium, this would amount to a waiver.

5. INSTRUCTIONS: Accident Insurance: Burden of Proof: Misleading. In an action on an accident insurance policy, where the court by one instruction tells the jury the burden was on the plaintiff to show that the injuries were accidental, and by another instruction tells the jury that the burden was on defendant to establish the fact that the injuries resulted from an attempt to commit suicide, the two instructions were clearly calculated to mislead the jury, as the jury would be unable to say which party carried the burden of proof.

6. ———: Accident Insurance: Defenses: Suicide: Instruction Inconsistent. In an action on an accident insurance policy, an instruction that if the jury were unable to determine whether plaintiff's injuries were caused by his own intentional act or by some other means, or causes unknown, then they cannot find for defendant on its defense of suicide, is inconsistent with an instruction that told the jury if they were unable to determine whether plaintiff or some other person turned on the gas in the room in which plaintiff was found, then their verdict should be in favor of the defendant.

7. ———: Broader than Evidence: Should not be Given. In an action on an accident insurance policy, where there was no evidence in the case that insured, himself, by inadvertence turned on the gas, or that any other person by inadvertence did so, or any evidence from which such facts could be inferred, an instruction based upon such theory is broader than the evidence and should not have been given.

8. INSURANCE: Accident Insurance: Vexatious Refusal to Pay: Must be Willful and Without Reasonable Cause. In an action on an accident insurance policy, where the evidence points strongly to the fact that the insured attempted to commit suicide, as the facts appeared to a prudent man before the trial, and failed to show that defendant's refusal to pay was both willful and without reasonable cause, the issue of vexatious refusal to pay, under section 6337, Revised Statutes 1919, should not have been submitted to the jury.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Granville Hogan,* Judge.

REVERSED AND REMANDED.

*M. U. Hayden* for appellant.

(1)  It is not only within the power, but it is also
the duty, of this court to search the record in this case
and determine therefrom whether there is any substan-
tial evidence to support the verdict of the jury and the
judgment of the court entered thereon. State ex rel.
Bank v. Sturgis, 276 Mo. 559; Moore v. Railroad Com-
pany, 268 Mo. 31; Borack v. Mosler Safe Co., 231 S. W.
623; Phillips v. Traveler's Insurance Co., 231 S. W. 947;
Stafford v. Adams, 113 Mo. App. 717; Pickens v. Rail-
road Co., 125 Mo. App. 669; Dutcher v. Railroad, 241
Mo. 137; State ex rel. Trust Co. v. Hallen, 165 Mo. App.
422.  (2)  By the terms of the policy sued on, appellant
agreed to pay to respondent the indemnity therein speci-
fied only in the event that he suffered disability "result-
ing from bodily injuries effected directly, exclusively and
independently of all other causes, through external, vio-
lent and accidental means, except when intentionally self-
inflicted."  The burden of proving that the injuries al-
leged to have been sustained by respondent were effect-
ed through accidental means, under the law in this State,
rested upon respondent. Laessig v. T. P. A., 169 Mo.
262; Scales v. Insurance Co., 212 S. W. 8; Newell v.
Fidelity & Casualty Co., 212 S. W. 991; Brunswick v.
Insurance Co., 278 Mo. 154; Lamport v. Aetna Ins.
Co., 199 S. W. 1020; Lamport v. General Accident
Corp., 272 Mo. 19; Prentiss v. Insurance Co., 225 S.
W. 695; Phillips v. Insurance Co., 231 S. W. 947; Nor-
man v. Commercial Travelers, 163 Mo. App. 175; Wright
v. Commercial Travelers, 188 Mo. App. 457; Goodes v.
Commercial Travelers, 174 Mo. App. 330; U. S. Fidelity
& Guar. Co. v. Blum, 270 Fed. 946; Grosvenor v. Fidelity
& Casualty Co., 102 Neb. 629.  (3)  The trial court erred

in submitting this case to the jury and this judgment should be reversed for the following reasons: (a) There is no substantial evidence in the record tending to establish that respondent's disability resulted from bodily injuries effected through accidental means within the meaning of the policy. See authorities cited under Point 2; Mutual Accident Association v. Barry, 131 U. S. 100; 4 Cooley's Briefs on Insurance, pp. 3156-3157; Newsome v. Insurance Co., 143 Ga. 785; Meister v. General Accident, 179 Pac. 913; Erb v. Accident Co., 232 Pa. 215; Phelan v. Insurance Co., 38 Mo. App. 640; Collins v. Fidelity & Casualty Co., 63 Mo. App. 253; Hester v. Fidelity & Casualty Co., 69 Mo. App. 186; Lovelace v. T. P. A. Co., 126 Mo. 104; Hutton v. Insurance Co., 267 Ill. 267. (b) There can be no presumption that the inhalation of gas, from which it is contended respondent suffered, was effected through accidental means. Scales v. Insurance Co., 212 S. W. 8; Laessig v. T. P. A., 169 Mo. 262; Brunswick v. Insurance Co., 278 Mo. 154. (c) Intentional self-destruction by a sane man is not an accident and therefore bodily injuries resulting from an unsuccessful attempt to commit suicide cannot be held to be effected through accidental means. If the completed act is not an accident, the unsuccessful attempt cannot be. Scales v. Insurance Co., 212 S. W. 8; Newell v. Fidelity & Casualty Co., 212 S. W. 991; Brunswick v. Insurance Co., 278 Mo. 154. (d) There is no evidence in this record tending to establish that, at the time when he suffered the inhalation of gas, respondent was not sane. He is presumed to have been sane at that time. The burden of proving that he was not sane was imposed upon respondent. See cases cited under preceding paragraph (c). (e) The evidence introduced and strongly relied upon by respondent, in this case, wholly negatives and disproves the theory of an accidental inhalation of gas as averred in his petition. (f) Under the uncontradicted evidence, the policy was void *ab initio* because of certain breaches of warranty committed by respondent in applying for

the policy. The case was tried by respondent upon the theory—and, at his instance, the jury were so instructed—that the misstatements made by respondent in applying for the policy were warranties. The uncontroverted evidence establishes that they were not true. Respondent's theory was that they were waived. Therefore no question here arises as to whether this case is, in anywise, affected by the misrepresentation statute so-called, in force in this State (Sec. 6142, R. S. 1919). Long Bros. v. U. S. Fidelity & Guar. Co., 130 Mo. App. 421; Commercial Bank v. Bonding Co., 194 Mo. App. 224; 1 Bacon on Benefit Societies (3 Ed.), 234, p. 512; Claver v. Woodmen, 152 Mo. App. 164; Trabue v. Insurance Co., 121 Mo. 75; State ex rel. Schmohl v. Ellison, 266 Mo. 580; Loehner v. Insurance Co., 17 Mo. 247; Crossan v. Insurance Co., 133 Mo. App. 537; Stephen v. Insurance Co., 61 Mo. App. 194; Murphy v. Insurance Co., 61 Mo. App. 323. (4) Statements in an application for a policy of this character which by the terms of the policy are made warranties, must be true or the policy is void. Commercial Bank v. Bonding Co., 194 Mo. App. 224; Claver v. Woodmen, 152 Mo. App. 164; Long Bros. v. United States Fidelity & Guar. Co., 130 Mo. App. 421. (5) Evidence wholly lacking in probative force cannot be regarded as tending to establish any material fact in a case, even though such evidence be admitted without objection. Sexton v. Railway Co., 245 Mo. 254; Stafford v. Adams, 113 Mo. App. 717; Pickens v. Railway Co., 125 Mo. App. 669; Bowlin v. Railway Co., 125 Mo. App. 419; Cartlich v. Railway Co., 129 Mo. App. 721; Majors v. Parkhurst, 124 Mo. App. 107; David v. Cider Co., 186 Mo. App. 13. (6) Instructions should be within the scope, not only of the evidence, but also of the allegations of the petition, as well. They may not be broader than the pleadings, nor may they yet cover a wider range than the facts established by the evidence. They should not refer to the jury matters not charged in the petition or established by the evidence. Hall v. Coal & Coke Co., 260 Mo. 351; State ex rel. Long

v. Ellison et al., 272 Mo. 571; State ex rel. Coal Co. v. Ellison, 270 Mo. 645; Martin v. Railway Co., 204 S. W. 589; Hufft v. Railroad, 222 Mo. 286; DeGonia v. Railroad, 224 Mo. 564; Devlin v. St. Louis, 252 Mo. 203; Riley v. Independence, 258 Mo. 671; Beave v. Transit Co., 212 Mo. 331; Davidson v. Transit Co., 211 Mo. 320; Mulloy v. Beal & McNamara Painting Co., 214 S. W. 405; Davis v. Railroad, 192 Mo. App. 419; McDonald v. Street Railway, 164 Mo. App. 111; Radtke v. Box Company, 229 Mo. 1; Tinkle v. Railroad Co., 212 Mo. 445; Smoot v. Kansas City, 194 Mo. 513. Young v. Dunlap, 195 Mo. App. 119; Robertson v. Telegraph Co., 186 Mo. App. 281; Miller v. Railroad, 180 Mo. App. 371; Smart v. Railroad, 164 Mo. App. 61; Quinley v. Traction Co., 180 Mo. App. 287; Schroeder v. Transit Co., 111 Mo. App. 67; Burrows v. Linkes, 180 Mo. App. 447; Abbott v. Mining Co., 112 Mo. App. 550; Marques v. Koch, 178 Mo. App. 143; Greenstein v. Foundry Co., 178 S. W. 1179; Gage & Co. v. Bank of Holcomb, 196 S. W. 1077; Burgess v. Ins. Co., 211 S. W. 114; Boles v. Dunham, 208 S. W. 480; Warner v. Bensinger, 198 S. W. 497; Turnbow v. Dunham, 197 S. W. 103; Wise v. Transit Co., 198 Mo. 546; State ex rel. Bank v. Sturgis, 276 Mo. 559; Forrester v. Products Co., 231 S. W. 668; State v. Edwards, 203 Mo. 539; State v. Rongey, 231 S. W. 609.   (7)   The theory upon which a litigant tries his case may be determined by his conduct during the trial, as well as by the instructions which he requests.   Heller v. Railroad Co., 209 S. W. 567.   (8)   In an action upon a policy of insurance, the court should not submit the issue of alleged vexatious refusal to pay the loss, in the absence of substantial evidence establishing that the company, without probable cause, refused to pay.   Non-Royalty Shoe Co. v. Insurance Co., 277 Mo. 399; Fay v. Insurance Co., 268 Mo. 373; Berryman v. Insurance Co., 199 Mo. App. 503; Blackwell v. Insurance Co., 80 Mo. App. 75; Weston v. Insurance Co., 191 Mo. App. 282; LaFont v. Insurance Co., 193 Mo. App. 543; Strawbridge v. Insurance Co., 193 Mo. App. 687; Rogers v.

Insurance Co., 157 Mo. App. 671; Patterson v. Insurance Co. 174 Mo. App. 37.

Lee W. Hagerman and Abbott, Fauntleroy, Cullen & Edwards for respondent.

BIGGS, C.—Plaintiff being non compos mentis and acting through his guardian, obtained a judgment against defendant in the sum of $1930, from which defendant appeals.

The action is founded on an accident insurance policy which provides a weekly indemnity of twenty-five dollars for total disability resulting from bodily injuries effected directly, exclusively and independently of all other causes through external, violent and accidental means. $1300 of the judgment represents weekly indemnity and hospital expenses; the balance $630, was assessed by the jury as a penalty in the way of damages and attorneys' fees for vexatious refusal to pay.

It was clearly established that plaintiff received injuries which totally disabled him as a result of inhaling illuminating gas. Whether the gas was inhaled accidentally or voluntarily by his own act was the mooted question in the case. No contention is made that plaintiff was insane at the time. Defendant asserts that the evidence conclusively shows that plaintiff's injuries resulted from an attempt to commit suicide and that the evidence in the case was insufficient to warrant the submission of the cause to a jury on the theory of an accident, and hence its demurrer to the evidence should have been sustained.

The facts may be summarized thus: The policy which provided a death indemnity as well as a disability indemnity, was issued to the plaintiff on March 27, 1915, to remain in force for one year. It was at the end of the year renewed for an additional period of twelve months from and after March 27, 1916. Plaintiff received his injuries which totally disabled him on September 25, 1916, at which time he was a married man having a wife and two daughters.

In 1915 prior to his injuries Bennett rented a room at the residence of a Mrs. Janez, in an apartment building situated at 5700 Clemens avenue, in the city of St. Louis, and from then to the time of his injuries resided there and was not living with his family, who were at the time of his injuries in the city of Chicago. The building referred to contained six apartments—two on each floor, with a hall through the center of the building and an apartment on each side. The apartment which Mrs. Janez occupied was on the west side of the building on the first floor—the building facing north. Immediately to the east of the building there was a sidewalk in lieu of the street and which formed the east boundary of the block. This sidewalk was called Cabanne Way and extended northwardly from Delmar avenue for several blocks. At the rear of the building was a yard and immediately south of the yard a public alley running parallel with Clemens avenue.

In September, 1916, Mrs. Janez contemplated giving up her apartment and so informed the plaintiff Bennett, making it necessary for him to secure new quarters. On Friday, September 22, 1916, Mrs. Janez informed Bennett that on the following Tuesday, September 26th, she would vacate the apartment and that he would be required to move. At the time she also told him that on Saturday, September 23rd, she would leave the city but would return about six o'clock on the evening of Monday, September 25th. She left the city as stated and returned to the apartment shortly after six o'clock on Monday. When she opened the front door of her apartment "the gas burst in my face," as expressed by her. She found the rooms filled with gas and went immediately to the kitchen; that upon opening the door thereof she found the air in the kitchen was fresh and she then noticed that the door leading to Bennett's room was closed; that after rapping on the door and calling to the plaintiff and receiving no reply she opened the door and the plaintiff was found in bed with his nightclothes on and unconscious but still alive and breathing heavily. Mrs. Janez

summoned Dr. Vineyard and also others, including the plaintiff's brother. At the time a gas jet on the wall in the plaintiff's bedroom was turned on and gas was escaping. The windows in the room were closed but were immediately thereafter opened and the gas turned off. The plaintiff was removed to a hospital, where he hovered between life and death for several days, but finally partially recovered. At the time of the trial he was mentally unsound as a result of gas poisoning and unable to attend to his own affairs.

At the time referred to it was discovered that inside of Bennett's room and adjacent to one of the windows was a screen which belonged to the window but which had been removed and placed inside of the room. The screen referred to was hung by means of hooks from the top and also had a hook in the center at the bottom which went into a ring on the window sill. Just about the center of the lower sash of the screen and over the hook which attached the screen to the window sill was a small cut about an inch or inch and a half long. On the window sill was found an open knife and beneath the window on the outside a step-ladder extending from the window sill to the ground, which step-ladder while partly obstructed by a tree was visible from the sidewalk referred to and known as Cabanne Way and along which people passed to and fro. Near the front door of the apartment, a considerable distance from Bennett's room was found his trousers, which contained his keys and a few pennies. In the room of Mrs. Janez across the hall from Bennett's room a revolver was found on the bed. Mrs. Janez had previously packed her belongings preparatory to giving up the apartment. However, a trunk belonging to Mrs. Janez had been opened and trays therefrom removed and placed upon the bed, but nothing belonging to her was missing; also the dresser drawers in her room were found open, although she had closed them before leaving. They, however, contained no property, as she had packed most of her belongings. There was no evidence of anything being disturbed in Bennett's room. In the bed-

clothing of Bennett's bed was found a piece of cloth gauze the size of a large handkerchief which contained the odor of chloroform. No bottle or other container for chloroform was found. A light overcoat of Bennett's was found hanging in his room. A coat and vest belonging to him was never found, nor were they ever able to locate his stickpins, cuff buttons or eye-glasses. No money was found in his trousers pockets, although he had cashed a check on the Saturday previous. The plaintiff's brother testified that he did not know that Bennett owned the revolver or the bone-handled knife referred to, although his opportunity of knowing such facts was meagre.

As far as the evidence discloses no one saw the plaintiff on the Monday referred to prior to his discovery by Mrs. Janez late in the afternoon of that day. On Sunday, the day before his injury, he spent the afternoon at his mother's house in the city of St. Louis, where he conversed with the family about plans for the next few days, and where he at that time planned to return to his mother's house on the next day, Monday, and settle some difficulty they were having with workmen repairing the house, and at the time drew a contract for the workmen to sign. As stated, his wife and daughters were in Chicago at the time, and one of the daughters on Sunday received a special delivery letter from the plaintiff saying that he would be in Chicago and see them on the following Tuesday. On Sunday evening previous to his injury, as had been his custom for some time, he took dinner with a Mrs. Foster, with whom he had been an intimate associate for a number of years. Mrs. Foster boarded in the neighborhood, and it was shown that it was Bennett's custom to dine with her at her boarding house practically every evening. On the Sunday evening referred to Bennett and Mrs. Foster dined at a public resturant and afterwards called on friends in North St. Louis, where they spent the evening card playing. At about 12 o'clock Bennett left Mrs. Foster at her boarding house, and this was the last time any one saw him before he was discovered in his injured condition.

From the testimony of the parties who saw Bennett on the Sunday referred to he was at that time in good spirits. On that day he made an engagement with his brother and brother's wife for the next day. As stated he had written to his daughter in Chicago that he would see her on Tuesday following. The parties at the card game referred to testified that he did not appear depressed and that he displayed particular interest in his host's children and remarked that he was going to see his own daughters shortly. On Sunday he had planned with his sister-in-law to send certain clothing to his family in Chicago. From the testimony of Mrs. Foster it did not appear that on the Sunday evening referred to Bennett had any intention of committing suicide, but on previous occasions plaintiff had indicated that he had that intention and often stated that he would like to go to sleep and never wake up.

Some time before Monday the plaintiff had notified his tailor to send to his apartment and get several suits of clothes, as he was going to move or leave the city and they should be kept until the tailor was told what to do with them. The tailor on Monday morning between 10 and 11 o'clock sent a messenger to the apartment for the purpose of getting the clothes, and as previously arranged with the plaintiff the front door was left unlocked so that the messenger could get the clothes, which were packed in a suit-case and found by the messenger near the front door. At the time, which was about 11 o'clock on Monday morning, the messenger smelled the odor of gas when he opened the door of the apartment. He took the clothes, but saw nothing of Bennett or anyone else at the time. At about 4:30 in the afternoon of Monday the odor of gas was noticed by one of the other tenants in the building. At about 6 o'clock the janitor of the building noticed the odor of gas, as did also one of the other tenants, who called it to the janitor's attention, and an investigation was thereupon made in the cellar of the apartment, but the cause of the gas leak was not discovered at that

time. Between 5 and 6 p. m. of that day the colored janitor of another apartment building in the neighborhood testified that he saw a white man go from the sidewalk known as Cabanne Way to the rear part of the apartments referred to and he seemed to be in a crouched position and came out in about twenty minutes thereafter, but this witness did not know the man and thought at the time he was one of the tenants.

There is much evidence in the record indicating a motive for suicide. Plaintiff had been a successful insurance man connected with Crane Insurance Agency for a number of years, but during the last few years previous to his injury he had become embarrassed financially and his business was on the down grade. At the time of his injuries he was indebted to his employers, on account of overdrafts, in the sum of $2,000. He was administrator of his father's estate and had used funds of the estate to the extent of $2500. He was without cash funds, and his bank account at the time showed a balace of $9.45. Shortly before his injury his connection with the Crane Agency had been terminated. Besides his financial condition, he had not lived with his family for a year and a half prior to the alleged accident. He was separated from his wife and they were not on good terms. Besides this he had formed an alliance with another woman and had been for a considerable time devoting his time and attention to her, and the evidence indicates that at about this time there was some chance of their relations being broke off. The evidence strongly indicates that his business had left him; that his home was disrupted, and that he was without funds. About a year before the injuries he had effected insurance on his life to the extent of $100,000. During July and August prior to the injuries he had taken out an additional $20,000. The premiums on these policies had to be met. About thirty days previous to the time he was injured he had executed a declaration of trust wherein he turned over to a trust company certain of his insurance policies, directing that the pro-

ceeds thereof be collected by it and invested for the ben-
efit of his family. At the same time he turned over to
the same trust company other insurance policies, di-
recting that it collect the proceeds thereof and invest
same for the benefit of his friend Mrs. Foster.

The foregoing is not a complete statement of all
the facts, but it is sufficient for the purpose of passing on
the question of the propriety of the court's ruling in
refusing defendants' demurrers to the evidence. On
the issue of whether plaintiff's injuries were the result
of an accident, the evidence was wholly circumstantial.
It must be construed in the light most favorable to plain-
tiff, and from it must be drawn reasonable inferences
in plaintiff's favor. Gauging it thus and in view of the
rules as to the degree of proof established by the Supreme
Court in such cases we think the evidence sufficient to
uphold a judgment in favor of plaintiff. [Reynolds v.
Maryland Casualty Company, 274 Mo. 83, l. c. 96, 201
S. W. 1128; Brunswick v. Standard Acc. Ins. Co., 278
Mo. 154, l. c. 172, 213 S. W. 45; Parker v. Aetna Life Ins.
Co., — Mo. —, 232 S. W. 708 (not yet officially reported).]

An examination will show that in these cases the evi-
dence indicating suicide was as strong, if not stronger,
than the evidence in the present case, yet the Supreme
Court said the question of accident or suicide was one
for the jury. What was said in the Brunswick case may
be said here, viz.: "The facts proven and which tend to
show suicide are not sufficient to exclude every reason-
able hypothesis favoring accident, and there is left, or
account of the presumption against suicide, an inference
of accident sufficient to take the case to the jury." [An-
drus v. Business Men's Acc. Ass'n. (Sup. Ct.), 223 S. W.
70, not yet officially reported.]

Defendant asserts that its demurrers should have
been given because of certain breaches of warranty com-
mitted by plaintiff in applying for the policy and the
renewal thereof, which rendered it void. The cause seems
to have been tried on the theory that the misrepresenta-
tion statute, section 6937, Revised Statutes 1909 (R. S.

1919, section 6142) did not apply to the policy. This being the trial theory, it will be adopted here, and it will be unnecessary to rule on the question as to whether the statute had any effect on the situation.

One of the breaches relates to a statement made by plaintiff in his orginal application for the policy in suit, which policy is dated March 27, 1915, which statement was to the effect that no policy of accident insurance theretofore issued to him had ever been canceled or renewal thereof refused. The defendant offered evidence tending to show that in August, 1915, the Fidelity & Casualty Company canceled an accident policy. It will be noted that this cancellation occurred after the date of the original policy. However, defendant asserts that in March, 1916, when a renewal receipt was issued to plaintiff, that it was agreed that same was issued in consideration of the truthfulness at that date of the warranties in the original policy. The answer to this is that the defendant in its answer made no claim of breach of warranty based on the contract of renewal, but its allegations in that regard related to breaches of warranty at the time the original policy was issued. The Fidelity & Casualty Company policy was not canceled until after that date, so at the time of the issuance of the original policy in suit the representation or warranty made by the plaintiff was true.

The plaintiff in the application also represented that his habits were correct and temperate. According to the evidence this was not true; but there was also evidence tending to prove that Charles L. Crane, the agent of the defendant company who wrote and signed the policy, had knowledge of the plaintiff's conduct at the time the policy was written. He was informed of the plaintiff's conduct, and in view of such knowledge on his part the company cannot set up such breach of warranty as a defense to the claim. If the agent of the defendant knew that the warranty was untrue and still issued the policy, accepted and retained the premium, this would amount to a waiver, and defendant could not escape liability on

account thereof. [Rosenthal-Sloan v. Ins. Co., 219 S. W. l. c. 671.]

We think the demurrers were properly overruled.

Defendant complains of the instructions. The court on behalf of the defendant instructed the jury that the burden was imposed upon the plaintiff to establish by the greater weight of the evidence, that the disability which he claimed resulted, independently of all other causes from the accidental inhalation of gas. In this character of case where the plaintiff claims that he was disabled through an accident, he carried the burden of showing that his injuries were due to an accident.

The court gave another instruction at plaintiff's request, which told the jury that as to the defense that the plaintiff's injuries were intentionally self inflicted, the burden rested upon the defendant insurance company to prove by the greater weight of the evidence that his injuries were caused by his own act intentionally inflicted.

It was unquestioned that the plaintiff received injuries by inhaling gas, and that at the time he was sane. The only issue in the case was whether or not he inhaled the gas accidentally or intentionally. The case is unlike a suit upon a policy of life insurance where a death occurs and wherein the defense is suicide. When death results, this prima facie establishes a liability. In that sort of a case where the defendant pleads suicide as a defense, the burden rests upon it to establish such defense. But here defendant engaged to pay plaintiff a certain sum of money in the event he was disabled through an accident. By the first instruction referred to the court properly placed the burden upon the plaintiff to establish that the disability occurred by reason of an accident. There was one issue in the case, namely, accident or suicide. The court by one instruction tells the jury the burden was on the plaintiff to show that the injuries were accidental, and by another instruction tells the jury the burden was on defendant to establish the fact that the injuries resulted from an attempt to commit suicide. The two instructions referred

to are clearly calculated to mislead the jury, and from them they would be unable to say, when they are read together, which party carried the burden of proof.

The case of Lamport v. Aetna Life Ins. Co.—Mo.—, 199 S. W. 1020, l. c. 1023, rules in a case of this character where a plaintiff sues for disability under an accident policy, that the burden rests upon the plaintiff to prove that his injuries were the result of an accident, and that the burden does not in such a case rest upon the defendant to prove that the injuries were intentionally inflicted.

By instruction No. 5 for the plaintiff the court told the jury that if they are unable to determine whether Bennett's injuries were caused by his own intentional act or by some other means or causes unknown, then they cannot find for defendant on its defense of suicide. By instruction No. 10 given for the defendant the court told the jury that if they are unable to determine whether the plaintiff or some other person turned on the gas in the room in which the plaintiff was found, then their verdict should be in favor of the defendant. These two instructions are clearly inconsistent.

By instruction No. 4 for the plaintiff the jury were instructed that if the plaintiff's injuries were caused by inhaling illuminating gas and if they found that he did not intentionally inflict said injuries upon himself but that said injuries were the result of inadvertence on the part of the insured or some other person or was the result of the act of some third person intentionally committed, then you may find that the injuries were accidental within the meaning of the policy.

The evidence in the case tended to establish either that Bennett released the gas intentionally or that some other person went into the apartment while Bennett was asleep for the purpose of robbery and murder and released the gas. There was no evidence in the case that Bennett himself by inadvertence turned on the gas, nor is there evidence that any other person by inadvertence did so or any evidence from which such facts could be

inferred. The instruction is broader than the evidence and should not have been given in that form. [Degonia v. St. L. I. M. & S. R. R. Co., 224 Mo. 564, l. c. 589, 123 S. W. 807.]

There are other objections raised to the judgment, but it will be unnecessary to discuss them, as they are not likely to occur upon another trial. If upon a retrial the evidence is the same, we do not think the court should submit to the jury the issue of alleged vexatious refusal to pay. The statute (sec. 6337, R. S. 1919) providing for the penalty is penal in character and should be strictly construed. The evidence in the case points strongly to the fact that the plaintiff attempted to commit suicide. We think it would indicate to a reasonable and prudent man that the plaintiff intentionally made an attempt to end his existence. The evidence failed to show that defendant's refusal to pay was both wilful and without reasonable cause as the facts appeared to a prudent man before the trial. Defendant had reasonable cause to refuse to pay the loss and a right to litigate the question without being penalized. [Non-Royalty Shoe Company v. Phoenix Ins. Co., 277 Mo. 399, 210 S. W. 37; Patterson v. American Ins. Co., 174 Mo. App. 44, 160 S. W. 59; Moritz Miller v. Fireman's Ins. Co. (St. Louis Court of Appeals), 229 S. W. 261.]

For the reasons herein stated, the judgment should be reversed and the cause remanded for a new trial.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded for a new trial. *Allen, P. J., Becker* and *Daues, JJ.,* concur.