LONG BROTHERS GROCERY COMPANY, Respondent, v. UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant.

Kansas City Court of Appeals, May 4, 1908.

1. APPELLATE PRACTICE: Finding of Referee: Special Verdict: Weight of Evidence. The appellate courts treat the report of a referee in a law case as the equivalent of a special verdict and will not weigh the evidence if the finding is supported by substantial testimony.

2. FIDELITY INSURANCE: Interpretation of Bond: Two Meanings. If a fidelity bond is fairly and reasonably susceptible of two constructions, one favorable to the beneficiary and the other to the surety company, the former, if consistent with the

object for which the bond is given, must be adopted, since the bond is the instrument of a common surety engaged in that business for profit on terms and conditions fixed by itself.

3. ————: **Breach of Warranty: Renewal: Premium: Estoppel.** Though the original bond be void by failing to state that the insured's remuneration was a commission on his sales, yet where that fact appears in a statement made by the beneficiary for renewal of the bond, the insurer after accepting and retaining the premium for the renewal and issuing certificate therefor, cannot be heard to complain of the original misrepresentation whether or not such misrepresentation constituted a breach of warranty.

4. ————: **Surety Bond: Renewal: New Contract.** The renewal of a fidelity policy constitutes a separate and distinct contract for the period of time covered thereby, but its terms and conditions are evidenced by the bond which is renewed where the renewal rceipt recites that it is renewed in accordance with the terms of the bond.

5. ————: ————: **Notice of Conduct: Stipulation.** Under the conditions of a surety bond the employer undertook to notify the insurer of any act of omission or commission on the part of the employee which may involve a loss for which the insurer is responsible, immediately after the occurrence of such act comes to the knowledge of the employer. The employer learned that the employee had been drunk, had lost or been robbed of money, etc. *Held,* the employer was not required to give notice of such conduct of the employee since the duty to notify was intended to relate only to acts of the employee affecting the question of his integrity and the scope of this duty could not be extended.

6. **APPELLATE PRACTICE: Indemnity Insurance: Discontinuance of Employment: New Contract: Referee's Finding.** The question as to the discontinuance of services and the reemployment of the employee is settled by the finding of the referee, since there is evidence to support such finding.

Appeal from Jackson Circuit Court.—*Hon. Jackson L. Smith,* Special Judge.

AFFIRMED.

*Ball & Ryland* for appellant.

(1)  The original bond was void by reason of false representations in the application therefor.  Savings &

Loan Co. v. Guarantee Co., 183 U. S. 402. (2) The renewal of the bond was void by reason of false statements in the employer's statement therefor. Van Cleve v. Casualty & Surety Co., 82 Mo. App. 668; McQuiddy v. Brannock, 70 Mo. App. 550.

*Karnes, New & Krauthoff* for respondent.

(1) The report of a referee is equivalent to a special verdict, and will not be disturbed, on appeal, as being against the weight of evidence, and we will not go into a consideration of the sufficiency of the evidence to support the finding of the referee. Lingenfelder v. Brewing Co., 103 Mo. 589; Wiggins Ferry Co. v. Railway, 73 Mo. 419; Howard Co. v. Baker, 119 Mo. 407; Bertholdt v. O'Hara, 121 Mo. 97; Bank v. Iron Co., 97 Mo. 43; Bender v. Markle, 37 Mo. App. 242; Goetz v. Peel, 26 Mo. App. 634; Tufts v. Latshaw, 172 Mo. 359. (2) Before the renewal was made, the appellant was notified that he, Knauber, was to be engaged on a commission, and with such notice, it accepted the premium and issued the renewal receipt. Adopting the somewhat puerile phrase, used by appellant's distinguished counsel, "isn't it a shame," that with respondent's money in its pocket, for this renewal, such an effort should be made by this appellant to escape liability on such ground. (3) In statement for renewal, appellant said they had examined his books, to March, 1901. There is no evidence of any dishonesty up to the time of the renewal. In fact, there was none. The embezzlements were all after May 1, 1901. State v. Healy, 48 Mo. 531. (4) Primarily it must be remembered that this is an action upon a contract of insurance. 1 Cooley's Brief of the Law of Insurance, p. 9; American Surety Co. v. Pauly, 170 U. S. 134. (5) It is said that the original policy issued by the defendant to the plaintiff herein is void. The reason of this is given that in the application for the original policy

it was stated that Knauber was employed on a salary, when in truth and in fact, he was employed on a commission basis. In Cracker & Candy Co. v. Insurance Co., 41 Mo. App. 530, the word "void," as applied to a policy of insurance, was carefully defined.

JOHNSON, J.—This is an action at law on a bond issued by defendant, a surety company, to guarantee to plaintiff, a wholesale merchant, the fidelity of T. W. Knauber, who was employed by plaintiff as a salesman and collector. By consent of parties, Frank Brumback, Esq., a member of the Jackson County Bar, was appointed "referee to try the issues of law and fact." In due course, he filed his report, in which appear findings of fact and conclusions of law, with the final conclusion that plaintiff is entitled to recover judgment against defendant in the sum of $933.10, with interest from the date of the bringing of the suit. Exceptions to this report were filed by defendant and overruled by the court. Judgment was rendered accordingly and defendant appealed.

Much of the attack on the judgment made by counsel is directed against the findings of fact and is based on the contention that facts stated by the referee are in conflict with the evidence. As to all such matters, we shall follow the well-settled rule of treating the report of the referee in a law case as the equivalent of a special verdict of a jury. We shall not weigh the evidence, but shall adopt as finally settled the facts stated by the referee which we find to be supported by substantial evidence. [Wiggins Ferry Co. v. Railway, 73 Mo. 389; Lingenfelder v. Wainwright Brewing Co., 103 Mo. 578; Howard County v. Baker, 119 Mo. 397; Berthold v. O'Hara, 121 Mo. 88; Tufts v. Latshaw, 172 Mo. 359.]

The case may be stated as follows: Knauber was employed by plaintiff on May 1, 1900, to sell cigars and tobacco in portions of Kansas City and to make col-

lections from his customers. His salary was fixed at $130 per month, with the understanding that within a month or so he could exercise the option of being paid a commission of fifty per cent. of the profits on his sales in lieu of a salary. May 19th, he applied to defendant for a bond guaranteeing his fidelity to plaintiff. In the written application, he was required to file, he was asked many questions, among them:

"Q. If paid by salary, state annual amount and when payable." To which he answered, "$130 per month, payable monthly." "Q. If you are remunerated on any other basis, state nature of engagement, with amount of probable monthly earnings." No answer was made to this question. It was stated that the applicant was employed by plaintiff as salesman and collector and had been since May 1st. Attached to the application was an "employers' statement" signed by plaintiff in which the statement appears that "the replies of the applicant herein are to the best of my knowledge and belief correct." The bond issued to plaintiff on May 26th provided that it would continue in force for one year from May 1, 1900, and that on the faith of the statement made by the employer as a part of the application, defendant would "make good and reimburse to the employer all and any pecuniary loss sustained by the employer, of money, securities or other personal property in the possession of the employee, or for the possession of which he is responsible, by any act of fraud, or dishonesty, on the part of said employee, in connection with the duties of the office or position hereinbefore referred to, and occurring during the continuance of this bond, or any renewal thereof," etc. Liability was limited to $1,000. Among the recitals of the instrument are the following:

"The company shall not be liable under this bond for the amount of any balance that may be found due the employer from the employee, and which may

have accrued prior to the date hereof, and which may be discovered within the period hereof; it being the true intent and meaning of this bond that the company shall be responsible as aforesaid, for moneys, securities, or property diverted from the employer through fraud or dishonesty on the part of the employee within the period specified in this bond.

"The company shall be notified in writing, addressed to the president of the company, at its office, in the city of Baltimore, State of Maryland, of any act of omission, or of commission on the part of the employee, which may involve a loss for which the company is responsible hereunder, immediately after the occurrence of such act shall come to the knowledge of the employer.

"The company, upon execution of this bond, shall not thereafter be responsible to the employer, under any bond previously issued to the employer on behalf of said employee, and upon the issuance of any bond subsequent hereto upon said employee in favor of said employer, all responsibility hereunder shall cease and determine, it being mutually understood that it is the intention of this provision that but one (the last) bond shall be in force at one time, unless otherwise stipulated between the employer and the company."

At the end of the month of May and after the bond had been issued, Knauber decided to work on a commission basis and thereafter was credited by plaintiff with one-half of the profits made on his sales, less the amount of bad accounts which were charged to his account. He was permitted by plaintiff (and the practice continued until March 8, 1901) to draw $25 per week on account of commissions, and plaintiff made further advances to pay some debts contracted by him. All of these payments were made by plaintiff voluntarily and none of the items charged to Knauber represented money of plaintiff collected by him. On the

date last mentioned, Knauber's account was overdrawn in the sum of $315.03, and plaintiff notified him that no more money would be paid him until the overdraft had been paid. He continued to work and in the latter part of April, becoming discouraged, applied to another concern for employment. Defendant contends that he was given the employment sought and actually left the service of plaintiff, but the referee finds, and we think is supported in the finding by substantial evidence, that Knauber did not discontinue his employment by plaintiff. Learning that such change was contemplated, plaintiff, to prevent it, began paying Knauber $22 per week on account and permitted him to draw that amount until the discovery of the fact that he was a defaulter.

In January or February, 1901, Knauber told the manager of plaintiff's cigar department that while drunk he had been drugged in a saloon and robbed of $200. He spoke as though the money were his own and plaintiff did not know or suspect that he had misappropriated or lost any of its money. It appears that Knauber's customers were chiefly dramshop keepers and that it was usual for cigar salesmen such as he to spend money at the places of such customers in drinking and treating others.

May 1, 1901, defendant issued the following renewal certificate to plaintiff: "In consideration of the sum of five dollars, the United States Fidelity and Guaranty Company hereby continues in force bond No. 68400, in the sum of one thousand dollars, on behalf of T. W. Knauber, in favor of Long Brothers Grocery Company, for the period beginning the 1st day of May, 1901, and ending on the 1st day of May, 1902, subject to all the covenants and conditions of said original bond heretofore issued on the 1st day of May, 1900." This certificate was issued on the faith of the following statement made by plaintiff: "This is to certify that

on the 1st day of March, 1901, the books and accounts of T. W. Knauber, in our employ as salesman and collector, were examined by us and we found them correct in every respect, and all moneys handled by him accounted for. He has performed his duties in an acceptable and satisfactory manner, and we know of no reason why the guarantee bond should not be continued. His salary is now commission, and he is employed as salesman and collector."

Between the 1st day of May, 1901, and the 8th day of September of the same year, Knauber collected from his customers money belonging to plaintiff in a total amount of $933.10, which he failed to turn in and converted to his own use. Plaintiff first learned of the existence of a shortage on the 18th day of September and promptly notified defendant of the loss. After the exchange of some correspondence relating to the claim, defendant declined to pay it and this suit followed. Defendant contends that "the original bond was void by reason of false representations in the application therefor," and that "the renewal of the bond was void by reason of false statements in the employer's statement therefor."

Preliminary to the solution of the questions argued under these two heads, it is important to have in mind the principles and rules which govern the interpretation of fidelity bonds issued by surety companies for hire. The ordinary surety or guarantor is the favorite of the law and his contract should be construed most liberally in his favor, but corporations whose business it is to issue contracts of guaranty or indemnity should be classed as insurers and their contracts must be interpreted by the principles and rules applicable to policies of insurance. If the bond is fairly and reasonably suscetible of two constructions, one favorable to the beneficiary and the other to the surety company, "the former, if consistent with the objects for which the bond is

given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by the officers or agents of the surety company. This is a well-established rule of the law of insurance." [American Surety Co. v. Pauly, 170 U. S. 133.] Being what has been termed a "common surety" engaged in business for profit and on terms and conditions fixed by itself, it is but just that the bond emitted by defendant be construed most liberally in favor of plaintiff. [1 Cooley's Brief on the Law of Insurance, p. 9, and cases cited; Guaranty Co. v. Bank, 183 U. S. 402.]

The two propositions of defendant above quoted are adduced from these principal points presented in its brief and argument: (1) The bond issued May 1, 1900, was void for the reason that in the failure to state in the application and employer's statement that the applicant had the option of working on a commission basis, a fact material to the risk was fraudulently concealed. This point was sustained by the referee and trial judge. (2) The renewal certificate issued May 1, 1901, did not create a new and independent contract but operated merely as a continuation of the old bond which, being void, could not be vitalized by such extension. (3) Plaintiff perpetrated a fraud on defendant in stating in his application for the renewal certificate that Knauber's accounts were correct and that it knew of no reason why the bond should not be continued, when it knew that he had largely overdrawn his account and had been robbed of $200 while in a drunken stupor. (4) Knauber, by leaving the employment of plaintiff, terminated the obligation of defendant, if any, under the bond, and his subsequent employment by plaintiff on substantially different terms, did not serve to restore the obligation.

The conclusion we have reached respecting the second point relieves us of the necessity of discussing the

first. We may concede for argument, without so hold-ing, that the original bond was void on account of the omission of plaintiff to disclose the real nature of the employment, but since the fact appears in the state-ment made by plaintiff for renewal of the bond that Knauber was being paid by commissions on his sales, defendant, after accepting and retaining the premium for a renewal and issuing a certificate therefor, will not be heard to complain of the original misrepresenta-tions whether or not such misrepresentation constituted a breach of warranty. In Proctor Coal Co. v. U. S. Fidelity & Guaranty Co., 124 Fed. 424, defendant suc-cessfully maintained the contention that a renewal cer-tificate of a bond identical in form with that here under consideration constituted a new contract of insurance; "that each renewal was a separate and distinct obli-gation of suretyship; the renewals having embodied in them all the terms and provisions of the original bond as is expressly stated in the renewal receipts." We find the conclusion reached by the learned judge who wrote the opinion in that case well supported by authority. The rule is generally recognized that "a renewal of a policy constitutes a separate and distinct contract for the period of time covered by such renewal. It is, however, a contract with the same terms and condi-tions as is evidenced by the bond which is renewed, be-cause the renewal receipt recites that it is renewed in accordance with the terms of the bond." [DeJernette v. Fidelity & Casualty Co. of N. Y., 33 S. W. 828; Rail-road v. American Surety Co., 99 Fed. 674; Insurance Co. v. Walsh, 54 Ill. 164; Brady v. Insurance Co., 11 Mich. 425.] Possessing knowledge of the true fact when it issued the new contract, defendant, by no sort of rea-son or logic can sustain the position that it might accept the benefits of a new contract and then, when a loss occurred, repudiate its burdens because of a misrepresentation in the original application. The only

warranties on which it would be heard to rely are those
embodied in the original application as modified or
changed in the subsequent application for a renewal.

Passing to the third point, we perceive no reason
for disturbing the conclusion of the referee that "plain-
tiff was not by the terms of the bond or by the terms
of the notice for continuance, or of the certificate for
continuance, or by law, to notify the defendant, either
of the fact that Knauber had been drunk and had lost
or been robbed of money, or of the fact that he had so
told Louis J. Long."  .  .  .  Nor "to notify defendant
that Knauber had been paid toward his compensation
more money than he had earned by way of commission."
Under the provisions of the bond above quoted, it was
made the duty of plaintiff to notify defendant "of any
act of omission, or of commission on the part of the
employee, which may involve a loss for which the com-
pany is responsible hereunder, immediately after the
occurrence of such act shall come to the knowledge of
the employer." Since the obligation of defendant was
to indemnify plaintiff against loss on account of fraud
or dishonesty on the part of Knauber, it is manifest
that in defining the duty of plaintiff with respect to
the giving of notice, we must hold that such duty was
intended to relate only to acts of Knauber affecting
the question of his integrity. Under the rule of inter-
pretation we have adopted, we could not extend the
scope of this duty beyond that just stated without
reading into the contract terms not expressly stated
nor to be implied necessarily from what is stated. The
fact that Knauber drank to excess on one occasion and
was robbed of his own money (which was understood
by plaintiff to be the fact when it applied for a re-
newal), did not bespeak any act of fraud or dishonesty,
nor impugn his integrity. Nor can it be said that in
voluntarily permitting Knauber to overdraw his ac-
count, the integrity of Knauber in any wise was af-

fected.    If defendant thought it material to be advised of such facts, it should have stipulated in the contract for notice of them.

The case before us is essentially different from that of Guaranty Co. v. Bank, supra, decided by the Supreme Court of the United States and greatly relied on by defendant.    There the contract provided that "the employer shall at once notify the company on his becoming aware of the said employee being engaged in speculation or gambling or indulging in any disreputable or unlawful habits or pursuits."    The employee did gamble; the employer became aware of it and failed to notify the company.    That this was a breach of a contractual obligation of the employer is apparent.    But we have no such provision before us in the present case and we do not hesitate in saying that it was not incumbent on plaintiff to notify defendant of any acts of omission or commission on the part of its employees, except such as might relate to his integrity.

Finally, as to the fourth point.    The question here involved is one of fact which was settled by the referee adversely to the contention of defendant.    The finding of the referee was supported by substantial evidence and for reasons hereinbefore stated, we shall not go behind it.    Knauber did not leave the service of plaintiff nor were the terms of his employment changed.    The fact that plaintiff discontinued the practice of making advances to him on account of commissions and then resumed the practice, was wholly foreign to the terms of the contract of employment and was not an alteration thereof.

Since it clearly appears that the renewal receipt stated a new contract of insurance, that the embezzlement, on account of which a recovery is sought, occurred during the period covered by said new contract, and that plaintiff gave immediate notice of the loss on receipt of the information that its employee was a de-

faulter, it follows, from what has been said, that the judgment must be affirmed. Accordingly, it is so ordered. All concur.