J. E. Rice, Respondent, v. The Provident Life and Accident Insurance Co., a Corporation, Appellant.—102 S. W. (2d) 147.

Kansas City Court of Appeals. March 1, 1937.

W. V. *Huston* and C. R. *Rittman* for respondent.

*Edgar J. Keating* for appellant.

REYNOLDS, J.—This is a suit by the plaintiff, J. E. Rice, against the defendant, The Provident Life & Accident Insurance Company, a corporation, for benefits arising from disability from rheumatism, under a monthly health and accident insurance policy issued to him by the Southern Surety Company of Des Moines and later assumed by the defendant, to which benefits he claimed to be entitled.

The suit originated before Preston Forsee, a justice of the peace in Kaw township, Jackson county, Missouri; and, from a judgment rendered on a trial had before said justice, an appeal was had to the Circuit Court of Jackson County at Kansas City, where it was tried

on March 26, 1936, at the March term, 1936, of the court before the Honorable Allen C. Southern, one of the judges of said court, without a jury, upon an agreed statement of fact, and resulted in a judgment on said date for the plaintiff in the principal sum of $153.33, together with the sum of $15.33 as a penalty for vexatious delay and the sum of $75 attorney's fees, in the total sum of $243.66, and for costs.

From such judgment so rendered, the defendant prosecutes this appeal.

Upon the trial in the circuit court, the policy sued on was introduced in evidence. It appears to be a monthly health and accident insurance policy issued to the plaintiff on June 1, 1928, by the Southern Surety Company. That same company thereafter was taken over by the defendant, and the policy in question was assumed by it, and the premiums thereon were collected by it. The policy provides that, in consideration of the agreements and representations contained in the application therefor and the payment of a premium of $3.65 on or before the delivery thereof, the company will pay to the insured (the plaintiff) benefits for disability resulting from sickness or accident as therein set forth, from June 1, 1928, to July 1, 1928, a period of one month. It contains a further provision under the heading ''Renewal Agreement'' that it ''may be continued for one or more consecutive periods of one calendar month each by the payment to the Company and acceptance by the Company of a renewal premium of $3.65 Dollars for each period of one calendar month.''

It is further provided in the policy that it could be cancelled by the company at any time by written notice to the insured and the repayment of unearned premiums.

As originally issued, the policy covers disability resulting from rheumatism.

The agreed statement of facts, signed by attorneys for the respective parties, is substantially as follows:

''It is agreed by and between the parties hereto and their respective attorneys that the facts herein are as follows:

''The plaintiff applied to the Southern Surety Company for an accident and health insurance policy and such a policy was issued by said company. Later the coverage was taken over by the defendant herein and premiums collected by defendant's agent from the plaintiff in the amount of $3.65 per month. The plaintiff, about June, 1932, suffered an attack of sciatic rheumatism and on or about July 20th, 1932, settled with the defendant, received payment and executed a release for said illness.

''The plaintiff will testify that, immediately after he had executed the release, the defendant's agent, Mr. J. M. Begley, said 'I will have

to put a rider on for rheumatism,' and presented a paper to Mr. Rice which he signed. Mr. Rice will also testify that he did not receive a copy of said rider.

"Mr. Begley will testify that he gave a copy of the rider to Mr. Rice and forwarded the original to the company and that he never attached a copy of said rider to the policy.

"On January 30th, 1935, plaintiff had another attack of sciatic rheumatism and was totally disabled from that date until March 20th, 1935, and that he was partially disabled from March 20th, 1935 to April 4th, 1935, and that said company was properly notified of said illness. The company refused to pay plaintiff's claim, maintaining that it was relieved of liability by said endorsement.

"It is agreed that the question to be submitted to the court is the question of the validity of the rider or endorsement mentioned above.

"According to the terms of the policy, if plaintiff is entitled to recover, he is entitled to remuneration as follows:

"One month and twenty days at $80.00 per month ....$133.33
"Fifteen days at $40.00 per month .................. 20.00

"Total ...................................$153.33

"The policy of insurance and the endorsement are admitted as evidence herein and made a part hereof.

"Respectfully submitted to the court."

The endorsement referred to in the statement of facts is as follows:

"Effective July 20, 1932. Not valid unless countersigned by a duly authorized agent.

"The insured under the policy to which this rider is attached, having suffered disability as a consequence of arthritis it is understood and mutually agreed that, in lieu of an increase in the premium, no liability shall attach to the Company should there be further disability or loss on the part of the insured, caused directly or indirectly, wholly or in part, by rheumatism, arthritis, lumbago, neuritis and/or sciatica, or any sequel of same.

"(Signed)    J. E. Rice, Insured.

"Witness

"Subject otherwise to all conditions, agreements and limitations of the policy as written, except as herein specifically provided."

It is set out therein that the endorsement was attached to and formed a part of the policy No. AC507956 (plaintiff's policy) and was countersigned at Kansas City, Missouri, July 23, 1932, by J. M. Begley, authorized agent, and W. C. Cartinhurt, vice-president and secretary.

Paragraph 1 under the heading "Standard Provisions" of the policy is as follows:

"This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the Insured is injured—"

The rider in question was to become effective July 20, 1932, during the period for which the policy was then in force. It extended to the first day of August following.

The policy was continued in force from month to month from August 1, thereafter until on or about January 30, 1935, by the payment of the agreed premium of $3.65 for each month by the plaintiff to the defendant and by the defendant's acceptance of such premium, when plaintiff suffered a second attack of sciatic rheumatism which disabled him. The company refused to pay his claim, maintaining that it was relieved of liability therefor by said rider.

The plaintiff introduced evidence tending to show that the reasonable value of his attorney's fees was $75.

At the conclusion of the evidence, the defendant requested an instruction in the nature of a demurrer to the case as made by the plaintiff, which instruction was refused.

### Opinion.

The defendant (appellant herein), upon this appeal, makes the following assignment of errors:

"I. The trial court erred in not sustaining and in refusing to give defendant's demurrer to the evidence offered and requested at the close of the entire case for the reason that the rider which plaintiff admitted he signed was a complete bar to plaintiff's action.

"II. The trial court erred in assessing defendant with penalties and attorney's fees for vexatious delay for the reason that the case turned on a disputed question of law upon which lawyers might honestly differ and because there was no evidence to support a finding of vexatious delay.

"III. The trial court erred in overruling the appellant's motion for new trial."

1. The first point made by defendant is under its assignment of error No. 1, and is to the effect that the court erred in refusing to give its demurrer to the evidence requested at the close of the entire case.

In support of its assignment of error and point made thereunder, the defendant urges that the rider in question is a complete bar to

the plaintiff's action, by reason of which it was entitled to its requested instruction in question sustaining a demurrer and that the court committed error in refusing it.

That this contention is well made seems apparent, provided such rider was valid as such and was based upon a sufficient consideration. It is, however, contended by the plaintiff that such rider was not valid and that it formed no part of the policy for the reason that it was neither attached thereto nor endorsed thereon; and that plaintiff cites Paragraph 1 under the heading "Standard Provisions" in said policy to support such contention.

The plaintiff contends further that, even if it had been attached to said policy and had formed a part thereof, it was nevertheless without any consideration, by reason of which it was invalid and it in no manner affected the policy as originally issued and as continued from month to month thereafter, up to and including the date of the second attack of sciatic rheumatism suffered by him, which disabled him and gave rise to the claim for the disability benefits for which he now sues.

It is insisted by the defendant that the rider was based on a valid consideration; that it is valid notwithstanding it may not have been actually attached to or endorsed on the policy; that the plaintiff admits that he executed it and had full knowledge of its contents and knew that it was intended thereby that the company should be relieved of liability for any disability thereafter resulting from future attacks of rheumatism and agreed thereto; that, with such knowledge, he renewed and continued the policy from month to month thereafter for approximately thirty months and never, at any time, made any objection to the rider; and that he is therefore estopped to deny the validity of said rider.

It is true that Provision 1 under the heading "Standard Provisions" of the policy in effect says that the policy itself, together with all endorsements thereon or papers attached thereto, shall be and shall constitute the contract of insurance. However, the rider itself, upon its face, states that it is attached to the policy. Such statement was therein when the plaintiff executed it. He must have agreed to such statement and must have agreed that it be considered as attached. It having thus been so considered and treated by the parties, it must be so treated and considered by us.

2. The rider recites upon its face that it was executed by the defendant in lieu of an increase in the premium on the policy. However, it does not appear from anything in the policy that the defendant reserved the right under any circumstances to increase the premium thereon. Upon the other hand, it agreed therein that the policy might be continued from month to month after the expiration of the first month on the same stated premium as that required for

the first month, provided only that the defendant should accept the same.

It is contended, however, by the defendant that, it having reserved the right to cancel the policy at any time by written notice to the insured and the repayment of all unearned premiums, it necessarily follows therefrom that it reserved the right to increase the premium inasmuch as, in the event of a refusal by the plaintiff to pay an increased premium when demanded, it could immediately cancel the policy and put it to an end.

It does not necessarily follow, in our opinion, that, because the defendant might at any time have canceled the policy and put it to an end, it therefore had the right, under the terms of the policy, to demand an increased premium of the plaintiff in order that it be not canceled but kept in force. The policy, as noted, in itself provided that the policy might be continued from time to time upon the payment of the same premium as that originally mentioned therein, provided only that the defendant accept the same. That defendant could have demanded an increased premium in lieu of canceling the policy is true, but there is no warrant for so doing found in the policy. It cannot therefore be said that the failure to demand or exact and to receive an increased premium was any consideration for the execution of the rider or one which inured to the plaintiff. It had the right at the expiration of any thirty day period to refuse to accept the regular monthly premium stated therein and to put the policy to an end; but it had no right under the terms of the policy to demand an increased premium in order that it might be continued.

3. The defendant urges further that, having agreed to the rider thereon instead of canceling the policy as it had a right to do, it suffered a detriment which is a sufficient consideration for such rider.

It is true that, in instances where there is a detriment to the promisee, a consideration is held to exist the same as where there is a benefit to the promissor. [Thompson v. McCune, 333 Mo. 758, 63 S. W. (2d) 41.]

However, there is here no detriment to the promisee which is apparent and no consideration to the plaintiff by way of reduction of the premium or otherwise. The defendant had the same right to cancel the policy immediately upon the execution of the rider as it had before. There was therefore to it no detriment in agreeing to the rider. It cannot be said either that the defendant waived an increase of premium in consenting to the rider or that it waived its right of immediate cancellation of the policy. Nor can it be said that the plaintiff was relieved of any danger of the immediate cancellation of his policy by reason of the fact that the rider was

executed ·and purported to be attached thereto. Neither can it be said that he was relieved of the necessity of paying an increased premium on his policy, for no right existed in the defendant to exact from him an increased premium under the terms of the policy.

4. It is contended further by the defendant that, the plaintiff's policy having terminated on August 1, 1932, after the execution of the rider, the plaintiff thereafter renewed it from month to month, thereby entering into new contracts with the defendant of which the rider was an integral part, and that, since the policy when renewed was subject to the rider, the rider became a part of the renewed contract and furnished a complete bar to the plaintiff's action, regardless of the fact that it was not originally based on a valid consideration.

We cannot agree to such contention. While the renewal of an insurance policy constitutes a separate and distinct contract for the period of time covered by the renewal, it· is nevertheless a contract with the same terms and conditions as those contained in the policy which is renewed. [Eicks v. Fidelity & Casualty Co. of N. Y., 300 Mo. 279, 253 S. W. 1029; Commercial Bank v. American Bonding Co., 194 Mo. 224,. 187 S. W. 99; Long Brothers Grocery Co. v. U. S. Fidelity &i Guaranty Co., 130 Mo. App..421, 110 S. W. 29; Grand Lodge of United Brothers of Friendship and Sisters of Mysterious Ten v. Massachusetts Bonding & Insurance Co., 324 Mo. 938, 25 S. W. (2d) 783.]

The policy renewed from time to time was the original policy issued, covering the period from June 1, 1928, to July 1, 1928, except as the provisions thereof had been modified, if at all, by the provisions of the rider in question. This policy contained the provision that it could be continued for one or more consecutive periods of one calendar month each by the payment to the company and the acceptance by the company of a renewal premium of $3.65 for each period of one month. The rider itself recites that it is subject ʼotherwise to all conditions, agreements, and limitations of the policy as written except as in itself is specifically provided. It is true that those who make a contract may unmake it or substitute another, either wholly or partially inconsistent; but the validity of the substituted contract must be determined, like that of any other, in the light of the situation existing at the hour of its making. If valid, then it will supersede or modify the first to the extent that the two will be unable to stand together. [Lieberman v. Templar Motor Co., 236 N. Y. 139.]

Applying the rule thus stated, the rider in question was at the time that it was executed void for the reason that no consideration at such time existed therefor; and, being inconsistent with and repugnant to the provisions of the original policy, it cannot stand.

The original policy as continued from month to month or as renewed from month to month was unaffected by such rider.

It therefore follows that the defendant's requested instruction in the nature of a demurrer was properly ruled and denied by the trial court.

5. The defendant next contends that the court erred in assessing it with penalties and attorney's fees for vexatious delay and, in support of such contention, urges, first, that the case turned on a disputed question of law on which lawyers might honestly differ and, second, that there was no evidence to support a finding of vexatious delay.

As to the defendant's contention that the case turned on a disputed question of law upon which lawyers may honestly differ, it has been held that, where the legal question raised by a plaintiff's petition is such that lawyers well may differ honestly and reasonably thereon, it is error to submit a question of vexatious delay. [State ex rel. Gott v. Fidelity & Deposit Co. of Baltimore, Md., 317 Mo. 1078, 298 S. W. 83; Aufrichtig v. Columbia Nat. Life Ins. Co., 298 Mo. 1, 249 S. W. 912; Porter v. Equitable Life Assur. Soc. of U. S. (Mo. App.), 71 S. W. (2d) 766.]

However, the legal question here presented as to the validity of a rider to be attached to the policy in question is one to be determined by the application of principles of general law long established, about which there can be no reasonable grounds for difference. The general law has long been that there must be a mutual consideration for a contract between two parties.

As to the defendant's contention that there was no evidence to support the finding of vexatious delay, it is true that there is no evidence in the record, aside from the testimony of an attorney relating to the reasonable value of an attorney's fee, the policy sued upon, and the rider in question, other than the agreed statement of facts.

It has been several times held that a vexatious refusal to pay an insurance loss is not to be deduced from the mere fact that, upon suit, the verdict is adverse to the defendant. [Keller v. Home Life Ins. Co., 198 Mo. 440, 95 S. W. 903; Patterson v. American Ins. Co. of Newark, N. J., 174 Mo. App. 37, 160 S. W. 59; Non-Royalty Shoe Co. v. Phoenix Assurance Co., Limited, of London, England, 277 Mo. 399, 210 S. W. 37; St. Clair v. Washington Fidelity Nat. Ins. Co. (Mo. App.), 89 S. W. (2d) 85.]

However, in Brown v. Railway Passenger Assurance Co., 45 Mo. 221, l. c. 227, and Keller v. Home Life Insurance Company, *supra*, it is said that the whole question of vexatious delay is a matter of fact to be determined by the jury. It must make up its verdict on this issue by a general survey of all of the facts and circumstances

in the case; and, if upon a full consideration it concludes that the refusal was unjustified and vexatious, the law authorizes it to assess the damages.

In Patterson v. American. Insurance Co. of Newark, N. J., *supra*, 174 Mo. App. 37, l. c. 44, it is said:

". . . And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty."

In Coscarella v. Metropolitan Life Insurance Co., 175 Mo. App. 130, l. c. 140, 157 S. W. 873, it is said: "It is true there is no direct and positive evidence to the effect that the delay in payment was vexatious, but such evidence—that is, positive and direct evidence— is not required." It is there further said that the jury, in determining vexatious delay, may take into consideration the validity of the plaintiff's claim and the fact that it became necessary to institute a suit to collect it; that the fact the defendant declined to pay without litigation is of itself evidence tending to show the delay thereabout to be vexatious; and that such is the established rule of decision. [Keller v. Home Life Ins. Co., *supra*; Cox v. Kansas City Life Ins. Co., 154 Mo. App. 646, 135 S. W. 1013; Williams v. St. Louis Life Insurance Co., 189 Mo. 70, 87 S. W. 499.]

Such being true, it cannot be said that there is no evidence to support the finding of vexatious delay. The defendant's second assignment of error must therefore be ruled against it.

6. The defendant's third assignment of error relating to the overruling of its motion for a new trial is too general and indefinite to present anything for review. It fails to state in what particular the court erred in overruling its motion or for what reason or reasons it erred.

Upon the whole record, the judgment of the trial court is to be affirmed. It is accordingly so ordered. All concur.