Dear Senator Wilson:
This is in reply to your request for an official opinion of this office concerning the following questions:
 During the Second Regular Session of the 80th General Assembly, the Legislature passed HB 1441 authorizing the governing body of any political subdivision to provide certain insurance benefits for employees. The bill also required that contracts for such insurance be purchased only after competitive bidding and be awarded to "the lowest and best bidder."
 Attorney General John C. Danforth, in Opinion 275-1973, previously offered some guidelines for subdivisions purchasing insurance under competitive bidding. In view of this new legislation, should these guidelines be revised or broadened? I would also like the following questions answered, either in the general guidelines or in specific items:
 1. Does the competitive bidding requirement apply to the renewal of presently existing insurance contracts? To all future renewals of any contracts?
 2. Must insurance contracts be bid on an annual basis? If not, is there a limit to how long they can run without rebidding?
 3. Does an insurance contract have to be rebid whenever there is a rate change or a policy benefit change?
 4. In evaluating bids to determine the "lowest and best," how does a subdivision evaluate "lowest" when bids are not identical? Can a subdivision accept only bids which meet exact specifications or is it free to accept one which deviates from specifications? What items can be considered, and how much weight can be given to those items, under the term "best?" Can a subdivision consider employer needs only or must they consider employee needs in evaluating best?
Because your questions relate specifically to Section 67.150, RSMo Supp. 1981, this opinion is intended to apply only to insurance contracts authorized by the statutory provision. This opinion is not intended to apply to forms of insurance, the purchase of which is not expressly authorized by Section 67.150. The word "insurance" as used herein, is limited to insurance which underwrites a plan to "furnish all or part of hospitalization or medical expenses, life insurance or similar benefits for [a political] subdivision's employees."
House Bill 1441, passed by the Second Regular Session of the 80th General Assembly and enacted as Section 67.150, RSMo Supp. 1981, provides as follows:
 1. The governing body of any political subdivision may utilize the revenues and other available funds of the subdivision, as a part of the compensation of the employees of the subdivision, to contribute to the cost of a plan, including a plan underwritten by insurance, for furnishing all or part of hospitalization or medical expenses, life insurance or similar benefits for the subdivision's employees.
 2. No contract shall be entered into by the governing body of the political subdivision to purchase any insurance policy or policies pursuant to the terms of this section unless the contract is submitted to competitive bidding and the contract is awarded to the lowest and best bidder.
Your first but unnumbered question concerns a document designated Opinion No. 275 (1973) to school boards within the State of Missouri. Although given an opinion number, this document contains advisory guidelines addressed to school boards in an effort to assist them in avoiding anticompetitive practices in the awarding of insurance contracts. We believe the assessment of Missouri antitrust law contained in the advisory guidelines is still valid. In fact, the guidelines' purpose, to assist school boards in avoiding violations of state and federal antitrust laws, is still important; we do not believe they are in need of any revision or broadening as a result of the enactment of Section 67.150.
Your first numbered question asks whether the competitive bidding requirement of Section 67.150 applies to the renewal of presently existing insurance contracts. By its very definition, the word "renewal" means the giving or receiving of an extension beyond an original termination date. Webster's New World Dictionary, Second College Edition, 1980. This understanding of what it means to renew a contract has found acceptance in Missouri appellate decisions which have addressed the question. In Rice v. ProvidentLife Accident Ins. Co., 102 S.W.2d 147 (Mo.App. 1937), the court stated:
 [T]he renewal of an insurance policy constitutes a separate and distinct contract for the period of time covered by the renewal, . . . Id. at 151.
See also, Matter of Supreme Meat Co., 73 F.R.D. 295 (E.D. Mo. 1976).
We believe that the renewal of an existing contract constitutes a separate and distinct contract for purposes of Section 67.150. If this were not the case, a political subdivision could ignore the clear requirements of Section 67.150 by simply renewing its existing contracts without bid. Thus, all renewals of presently existing insurance contracts and all future renewals of insurance contracts of political subdivisions are subject to the competitive bidding requirements of Section 67.150.
Regarding your second numbered question, there is no express provision in Section 67.150 which requires the bidding of insurance contracts of political subdivisions, on an annual basis, nor is there any impermissible length for an insurance contract expressed. However, Article VI, Section 26(a), Missouri Constitution (1945) provides:
 No county, city, incorporated town or village, school district or political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution.
Article VI, Section 26(a) has been held to prohibit a political subdivision from anticipating future revenues (See, Ebert v.Jackson 70 S.W.2d 918 (Mo. 1934). Under this constitutional provision, a contract for insurance for a political subdivision that creates an indebtedness exceeding the revenue and income for the year in which the contract was executed plus any unencumbered balance on hand from previous years is prohibited under Article VI, Section 26(a). See also Opinion No. 304 (1965) and Opinion No. 88 (1974), for discussions of long-term contracts by political subdivisions.
Your third numbered question asks whether an insurance contract must be rebid whenever there is a rate change or a policy benefit change. Insurance is a matter of contract and is governed by the principles of law applicable to contracts. Galemore v.Haley, 471 S.W.2d 518, 523 (Mo.App. 1971). Under contract principles, modification of a material element of a contract results in a new contract. Barr v. Snyder, 294 S.W.2d 4 (Mo. 1956). Section67.150 requires that a new bidding procedure take place when any increase in rates and/or material reduction in policy benefits is contemplated.
The first part of your fourth numbered question asks how a political subdivision can assess bids which are not identical. We believe Section 67.150 is intended to remove elements of favoritism and fraud in the awarding of public employee insurance contracts. In order to remove the potential for bids which are not similar, we believe a political subdivision must establish specifications upon which bids will be accepted. The purpose of specifications is to provide a common standard upon which bids can be based and fairly compared. A bid which deviates substantially from specifications is tantamount to a counter proposal, invites favoritism and detracts from real competition. 64 Am.Jur.2d,Public Works and Contracts, Section 66 (1969).
We acknowledge that insurance companies offer a wide variety of benefit packages. However, we believe that officers of a political subdivision must establish specifications which define the minimum policy benefits and coverage acceptable when advertising for bids for insurance contracts. We further believe that no bid should be accepted which deviates substantially from these established minimums. In this way, each bid will adhere to a standard against which other bids can be compared for purposes of determining the lowest bidder.
The remainder of your fourth question deals with evaluating bids to determine the "lowest and best." Our Opinion No. 28 (1941) should be referred to for guidance on this subject, as well as the case of Missouri Service Co. v. City of Stanberry, 341 Mo. 500,108 S.W.2d 25, 33 (1937), which stated:
 The expression "lowest bidder" is used in its logical and practical, rather than in its grammatical sense. . . . "The general rule as deduced from the cases is that, in awarding contracts of this nature, public authorities are vested with discretion in determining who is the lowest and best bidder, and their discretion will not be interfered with by the courts, even if erroneous, provided it is based on a sound and reasonable discretion founded on facts and exercised in good faith, in the interest of the public, without collusion or fraud, nor corruptly, nor from motives of personal favoritism or ill will, and not abused." State ex rel. Dreyer, 183 Mo.App. 463, 486, 167 S.W. 1123, 1129, quoting footnote of 38 L.R.A. (N.S. 655).
With regard to the letting of contracts for public work, Statev. Dreyer, 167 S.W. 1123 (Mo.App. 1914), overruled on other grounds by State ex rel. Johnson v. Sevier, 339 Mo. 483, 98 S.W.2d 677
(banc 1936), quoted with approval from Cyclopaedia of Law and Procedure:
 Where the right to reject all bids is expressly reserved, or where the proposal is to the "lowest and best bidder," the "lowest responsible bidder," or other similar qualification is employed, the award of the contract within the discretion of the municipal authorities may be made bona fide to another bidder than the lowest, and the lowest bidder will have no right to demand the award to him; . . . but, under all circumstances, the lowest bidder has the right to fair consideration and treatment; and an award of the contract to another by corruption, by collusion, or for any other than legal and just considerations will be voidable at his option. See 28 Cyc. 663, 664. Id. at 1128.
In evaluating which bid is the lowest and best, the guidelines contained in the above cases and opinion are instructive. Because the officers of the political subdivision are best aware of the needs of the subdivision which a particular bidding procedure is designed to meet, the determination of "best" is properly left to the discretion of such officers. As long as that discretion is exercised in good faith, the award is not subject to interference by the courts.
The factual possibilities inherent in your fourth question are legion. Therefore, we offer the guidelines adopted by the courts and respectfully decline to answer the specific aspects of your fourth question.
CONCLUSION
It is the opinion of this office that pursuant to Section67.150, RSMo Supp. 1981, and with specific reference to the types of insurance authorized by that section, all renewals of presently existing insurance contracts and all future insurance contracts of political subdivisions must be competitively bid. A political subdivision need not rebid its insurance contracts annually; a political subdivision may not enter into a contract that would create an indebtedness in excess of the revenue and income for the current year plus any unencumbered balances from previous years. Any proposed material modification of an insurance contract requires that the contract be rebid. A political subdivision may accept only those bids which meet the specifications established by the political subdivision. The determination of the "lowest and best" bid properly lies within the discretion of the authorities of the political subdivision.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Patricia Perkins.
Very truly yours,
 JOHN ASHCROFT Attorney General