874 F.Supp. 961 (1995)
RESOLUTION TRUST CORPORATION, Plaintiff, Lee W. Geiser, et al., Plaintiff Intervenors,
v.
The AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant.
No. 4:93CV02612 GFG.
United States District Court, E.D. Missouri, Eastern Division.
January 31, 1995.
*962 Richard C. Sanders, Elizabeth Jolliffe Basten, Hill Lewis, Detroit, MI, LaVern A. Pritchard, Hill Lewis, Minneapolis, MN, Jon A. Stewart, Resolution Trust Corp., c/o Legal Div., Washington, DC, Craig N. Schmid, Dorothy L. White-Coleman, Partner, White and Ovletrea, St. Louis, MO, for Resolution Trust Corp.
Barry A. Short, Partner, John E. Hall, Lewis and Rice, St. Louis, MO, for Lee W. Geiser, George W. Trafton, Kenneth R. Fiala, Harold H. Smith, J.W. Peterson, Ralph Hunsche, Merita M. Rocklage, Jackson A. Wright, Theodore J. Hurtgen, Jr.
John E. Hall, Elizabeth W. Lane, Lewis and Rice, St. Louis, MO, for John R. Aselage.
Jonathan Ries, Lyndon P. Sommer, Sandberg and Phoenix, St. Louis, MO, Michael P. Tone, Anne Fiedler, Kristi A. Gleim, Peterson and Ross, Chicago, IL, for American Cas. Co. of Reading, Pa.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on various motions. This case involves an insurance coverage dispute. Plaintiff, Resolution Trust Corporation (RTC), seeks a declaration of rights under or reformation of, or other relief, concerning directors' and officers' liability insurance policies purchased by Community Federal Savings and Loan Association, St. Louis, Missouri ("Community Federal") from defendant American Casualty Company of Reading, Pennsylvania (American Casualty). RTC wants a determination establishing coverage under such policies for the claims asserted by RTC against certain of Community Federal's former directors and officers in another pending lawsuit in the Eastern District of Missouri, RTC v. Fiala, et al., Cause No. 4:93CV2613 JCH (the "RTC action"). Some former directors and officers ("Intervenors") have intervened in RTC's case against American Casualty. RTC and American Casualty have both filed motions for summary judgment. Intervenors have also filed a motion for summary judgment which joins in RTC's motion.
Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, *963 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c).
Once the moving party has met his burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Anderson, 477 U.S. at 257, 106 S.Ct. at 2514-15. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
Certain facts are not disputed. In April 1982, MGIC Indemnity Corporation ("MGIC") issued a policy to Community Federal for director and officer liability coverage for the period of April 13, 1982, to April 13, 1985 ("the 1982 policy"). The policy was a so-called "Form A" policy. A Form A policy is one under which the limits of liability were applied to each individual director or officer. By contrast, a "Form B" policy is one under which the limit of liability is capped at a particular sum for all directors and officers.
On November 1, 1983, American Casualty assumed the rights and obligations of MGIC under Community Federal's 1982 policy. On March 25, 1985, Community Federal submitted a renewal application using a standard form of the CNA Insurance Group of which American Casualty is a member. American Casualty does not deny receiving the form. On or about March 29, 1985, American Casualty solicited a renewal of Community Federal's 1982 policy.
On June 7, 1985, American Casualty issued a policy with the same policy number as the 1982 policy. This "1985 policy" purported coverage from April 13, 1985, to April 13, 1986. Apparently, the 1985 policy was a Form B policy, rather than a Form A. This change resulted in a significant decrease in coverage. The 1982 policy contained a limit of liability of $10 million for each loss with a $10 million aggregate limit of liability each policy year for each director and officer. The 1985 policy contained a $10 million aggregate limit of liability each policy year for all directors and officers.
Thereafter, American Casualty issued a new policy with a new number to Community Federal covering April 13, 1986, to April 13, 1987. That policy was renewed in 1987 and 1988. All three policies contained the same coverage as the 1985 policy. American Casualty also issued a policy in 1989 with a $5 million aggregate limit. Thereafter, American Casualty refused to renew the policy and terminated its relationship with Community Federal.
All policies are "claims-made" policies which only provide coverage for claims first made during their respective policy periods. Continental Cas. Co. v. Maxwell, 799 S.W.2d 882, 886 (Mo.Ct.App.1990). The policies provide coverage only to the directors and officers of Community Federal for claims made against them. Such claims must constitute losses which the directors and officers of Community Federal become legally obligated to pay as a result of wrongful acts committed by them. The policies provide no coverage to Community Federal itself, except to the extent Community Federal subsequently indemnifies its directors and officers for covered claims made against them.
On April 11, 1986, Community Federal sent American Casualty a letter indicating that claims might be possible as a result of certain real estate projects. American Casualty acknowledges receipt of such letter but contended in later letters and still maintains that the April 11 letter was too vague and contained too little information to constitute notice of a claim. RTC contends that the April 11 letter provided American Casualty with legally sufficient notice of claims.
Community Federal attached a letter dated November 5, 1985 to the April 11 letter. *964 The November letter also purported to give notice of the claims referenced in the April 11 letter. American Casualty does not admit that it received that letter in November of 1985.

I. Notice
The first issue the Court must address is whether sufficient notice of claims was given to American Casualty during the period of the 1985 policy. The Court initially notes that the parties do not dispute the applicability of Missouri law. Furthermore, because an insurance policy is a contract, its construction is a question of law and is governed by basic contract rules. Atlas Pallet, Inc. v. Gallagher, 725 F.2d 131, 134-35 (1st Cir.1984).
In order to trigger coverage of the 1985 policy, the insured was required to give notice of claims to American Casualty during the policy period, that is, between April 13, 1985 and April 13, 1986. (Def.'s Exh. S, 1985 Policy at § 2(a).) The 1985 policy contains the following provision on notice:
6. NOTICE OF CLAIMS
(a) If during the policy period the Association or the Directors or Officers shall: (i) receive written or oral notice from any party that it is the intention of such party to hold the Directors and Officers, or any of them, responsible for a Wrongful Act; or (ii) become aware of any occurrence which may subsequently give rise to a claim being made against the Directors and Officers, or any of them, for a Wrongful Act; and shall, during such period, give written notice thereof to the Insurer as soon as practicable and prior to the date of termination of the policy, then any claim which may subsequently be made against the Directors or Officers arising out of such Wrongful Act shall, for the purpose of this policy, be treated as a claim made during the policy year in which such notice was given.
(b) The Association or the Directors or Officers shall, as a condition precedent to their rights under this policy, give to the Insurer notice in writing as soon as practicable of any claims made and shall give the Insurer such information and cooperation as it may reasonably require.
The language of section 6(a) of the 1985 policy requires only that the insureds give written notice to American Casualty as soon as practicable and prior to the termination date of the policy. RTC has produced evidence that American Casualty received the April 11 letter and an attached copy of the November letter on April 11, 1986, within the policy period. (Pl.'s App. Tabs 3, 11, 24, 25, 26, 29.) Therefore, since the notice given in this case was timely, the remaining issue becomes whether it was adequate.
In order to assess whether the November and April letters provided adequate notice under the 1985 policy, the Court must look at the content of the letters. The letter dated November 5, 1985, attached to the April 11 letter, states:
The FHLBB Supervisory Agent, Harlan Halsne, in regard to certain real estate projects of our service corporations, made some statements relating to our Directors. In the broadest interpretation of our responsibility to give you notice of the possibility of claim, even though remote, we felt it prudent to alert you to the statements made by Mr. Halsne. The essence of his conversation with a group of the Association officers was that because of some deficiencies in documentation, if these projects result in losses, which he hoped they would not, he would make every effort to place the responsibility from these losses directly on the board of directors.
We believe the basis of his current concern stems more from methods of documentation than the merit of projects or the advisability of their undertaking. Currently our records indicate these projects are performing as expected and it is expected that the completed projects should not result in a loss.
If you need any further information, please contact us. Also our general counsel, Mr. Robert Hickel, is available to discuss this matter with you.
(Def.'s Exh. S.) The April 11, 1986 letter adds little content to the above November letter; it purports to further notify American Casualty of the possible existence of claims by regulators on the facts described in the *965 November letter.[1] The letters contain the identity of a potential claimant and very vague descriptions of the circumstances under which the insureds became aware of a potential claim and the nature of claim.
In assessing the adequacy of notice in this case, the Court must look to the policy. Under section 6(a) what information should the required notice contain? Under the general rules for interpreting insurance policies in Missouri, if the language of an insurance policy is unambiguous, the policy will be enforced as written absent a statute or public policy requiring coverage. Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. banc 1993). If the language is ambiguous, the policy will be construed against the insurer. Id.
On the required content of notice, the language of section 6(a) is ambiguous. The provision states that when (1) the insureds have become aware of some occurrence which may subsequently give rise to a claim or (2) the insureds have received written or oral notice of a party's intent to make a claim against them, then "notice thereof" should be given. The provision does not specify what information should be disclosed to the insurer. Section 6(b) does require the insured to provide American Casualty with more information, but only as the insurer "may reasonably require," suggesting that such disclosures would follow the giving of notice under section 6(a).
American Casualty argues that the letters sent in this case do not provide enough specificity. The cases upon which American Casualty relies are distinguishable. Many of the cases involve more demanding notice provisions than the one in this case, which call for notice of any "specified Wrongful Act" that may give rise to liability. Resolution Trust Corp. v. Ayo, 31 F.3d 285, 288-89 (5th Cir.1994); McCullough v. Fidelity & Deposit Co., 2 F.3d 110, 111 (5th Cir.1993); American Cas. Co. of Reading, Pennsylvania v. Federal Deposit Ins. Co., 944 F.2d 455, 460 (8th Cir.1991); Federal Deposit Ins. Co. v. Caplan, 838 F.Supp. 1125, 1127 n. 4 (W.D.La. 1993).
In addition, many of those cases involve constructive notice issues unlike the instant suit where Community Federal attempted to comply with notice provisions by sending American Casualty a letter on behalf of its directors and officers. Ayo, 31 F.3d at 290-91 (holding that insurer's receipt of regulatory reports detailing acts or omissions that could give rise to claims did not constitute adequate notice); McCullough, 2 F.3d at 112-13 (holding that insurer's receipt of bank's annual report referencing a cease and desist order which related to acts that could have given rise to claims did not constitute adequate notice); Federal Deposit Ins. Co. v. Barham, 995 F.2d 600, 604-05 (5th Cir.1993) (holding that insurer's receipt of agreement between bank and government agency regarding implementation of policies designed to prevent future violations of law did not constitute adequate notice under policy requiring disclosure of very specific information); Federal Deposit Ins. Co. v. St. Paul Fire & Marine Ins. Co., 993 F.2d 155, 159 (8th Cir.1993) (holding that claims information found in renewal application did not constitute adequate notice); American Cas. Co. of Reading, Pennsylvania v. Federal Deposit Ins. Co., 944 F.2d at 460 (holding that claims information found in renewal application did not constitute adequate notice).
The Court must reject American Casualty's contention that the letters in this case did not provide enough specific information to constitute adequate notice. There is no requirement of such specificity in the language of section 6(a). Indeed, the provision *966 seems to require very little particularity and because under Missouri law the ambiguous provision must be construed against the insurer, the Court finds that the notice given by the insureds in this case was adequate and timely and satisfied the requirements of the 1985 policy.[2]

II. Coverage
Having determined that notice was adequate and timely in this case, the Court must address the amount of coverage available to the insureds under the 1985 policy. On its face, the 1985 policy provides a $10 million aggregate limit of liability each policy year for all directors and officers. As discussed above, the prior 1982 policy contained more coverage: $10 million aggregate limit of liability each policy year for each director and officer.
RTC contends that such a significant change in policy coverage necessitated notice and that at the time Community Federal sought to renew the 1982 policy, American Casualty did not give Community Federal any notice of its intent to reduce the coverage offered by the 1982 policy. RTC further argues that American Casualty's failure to give notice about changes effected a renewal of the 1982 policy with identical terms and coverage. American Casualty admits that it did not give notice of an intent to cancel or not to renew the 1982 policy; instead, it claims that it renewed the 1982 policy when it issued the 1985 policy. (Pla.'s Reqs. for Admis. Nos. 9, 10.) American Casualty contends that the 1985 policy cannot be modified because Community Federal accepted the terms of the 1985 policy and subsequently renewed the policy through four successive policies.
Under section 7(b) of the 1982 policy, the insurer was required to provide the insureds with thirty days notice of any intention on its part not to renew the policy. Additionally, under section 2(b) of the 1982 policy, if the insurer refused to renew the policy, then the insureds would have had a right, upon payment of seventy-five percent (75%) of the annual premium, to an extension of coverage under the 1982 policy for a year after the date of the refusal to renew. The insureds would have had to make the request for such an extension in writing, accompanied by payment of the premium, within ten (10) days after the effective date of the nonrenewal.
RTC contends that a $130 million reduction in coverage was tantamount to a constructive nonrenewal. The nonrenewal triggered the notice provision, section 7(b), of the 1982 policy, entitling Community Federal to the benefits of extending the 1982 policy coverage under section 2(b). American Casualty asserts that a modification of coverage is not tantamount to constructive nonrenewal and that this is simply a case of an insured failing to educate itself about plainly stated policy limits.
American Casualty further argues that the amount of coverage was clearly stated on the declaration cover sheet of the policy and that Community Federal subsequently renewed the policy four times. RTC counters that the declaration sheets of the 1982 and 1985 policies contained only one difference: the elimination of five words. The 1982 policy declaration designated $10,000,000 as the "Aggregate Limit of Liability each policy year for each Director and Officer." (Def.'s Exh. A.) The 1985 policy declaration designated $10,000,000 as the "Aggregate Limit of Liability each policy year." (Def.'s Exh. D.) RTC also stresses that the 1985 policy bore the same policy number as the 1982 policy and that in the corner of the 1985 policy declaration, in a box containing the words "renewal of" and "replacement of," the word "SAME" was typed.
Under American Casualty's reading of the 1982 policy, the "nonrenewal" necessary *967 to trigger section 7(b) would have to be a cancellation in coverage. RTC claims that "nonrenewal" constitutes something less than cancellation, such as the failure to renew a policy with the same terms and conditions as the previous policy. The 1982 policy contains no definition of "nonrenewal" or "cancellation." In addition, in sections 7(b) and 2(b), "cancellation" and "nonrenewal" are contrasted; however, whether the contrast is a result of a difference in meanings that is substantive or temporal is not clear. Therefore, the contract is ambiguous and should, under Missouri law, be construed in favor of the insureds' understanding of nonrenewal. Peters, 853 S.W.2d at 302.
Furthermore, under Missouri law, it is true that a renewal of an insurance policy constitutes a separate and distinct contract for the period of time covered by the renewal. DeWitt v. American Family Mut. Ins. Co., 667 S.W.2d 700, 705 (Mo. banc 1984); Rice v. Provident Life & Accident Ins. Co., 102 S.W.2d 147, 151 (Mo.Ct.App.1937). However, a renewal is also considered a contract with the same terms and conditions as those contained in the policy which is renewed. Hester v. American Family Mut. Ins. Co., 733 S.W.2d 1, 2 (Mo.Ct.App.1987); Rice, 102 S.W.2d at 151. As the Eighth Circuit explained when applying similar Iowa law in McCuen v. American Casualty Company, a change in policy terms constitutes a failure to renew a particular policy. 946 F.2d 1401, 1404-05 (8th Cir.1991). The modified policy is actually an offer of a new policy and not a renewal. Id. The McCuen court rejected the insurer's contention that a failure to renew equals only a failure to provide coverage. Id.
The cases relied upon by American Casualty for the rejection of the constructive nonrenewal concept are distinguishable. In those cases, the courts found that adequate prior notice had been given to the insureds by the insurers of changes to the renewal policies. Adams v. Greenwood, 10 F.3d 568, 572 (8th Cir.1993) (applying Minnesota law); St. Paul Fire & Marine Ins. Co. v. Federal Deposit Ins. Co., 968 F.2d 695, 700 (8th Cir.1992) (applying Minnesota law). In addition, American Casualty has not produced sufficient evidence to create a question of fact regarding whether notice was given in compliance with section 7(b) or whether the parties agreed in this case to the new terms specifically with notice. RTC, on the other hand, has produced evidence establishing a lack of notice on the part of American Casualty and a lack of agreement between the parties. (Pla.'s App. Tab 12 Chesler Dep. 34, 42-43, 49, 54-56, 58-59, 63-65; App. Tab. 13, Dahlstrom Dep. 44, 45, 48, 65; App. Tab. 14 Pollihan Dep. 23-24, 63-64, 67, 82-83; App. Tab. 15 Smith Dep. 8-14; App. Tabs 1, 16.)
Therefore, in this case, American Casualty's tendering of a policy with a significant change in coverage constituted a constructive nonrenewal. The nonrenewal triggered sections 7(b) and 2(b) of the 1982 policy. Therefore, the Court finds that American Casualty should have given Community Federal written notice thirty days in advance of the nonrenewal and that Community Federal is entitled, as it would have been, to extended coverage under section 2(b).
RTC also seeks a declaration that the litigation filed by RTC against former officers and directors of Community Federal relates back to the April 11, 1986 notice of claims. RTC has introduced evidence supporting its contention. (Halsne Aff. ¶ 14; Pla.'s App. Tab 4, Bertuca Dep. 41-49; App. Tab 9, Hayden Dep. 27-34, 39-40, 55-57; App. Tab 10, Hickel Dep. 17-30; App. Tabs 27, 28, 30, 31, 32-35; Supp.App., Hayden Dep. 48-54.) American Casualty has not responded with any evidence to rebut RTC's contention. American Casualty cannot simply rest on its pleadings, and this Court is "`not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir.1990), (quoting InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)). Therefore, the Court will find that the litigation filed by RTC against former officers and directors of Community Federal relates back to the April 11, 1986 notice of claims.

*968 ORDER AND JUDGMENT

IT IS HEREBY ORDERED that plaintiff's motion for leave to file an amended complaint is granted.
IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted.
IT IS FURTHER ORDERED that intervenors' motion for summary judgment is granted.
IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied.
IT IS FURTHER ORDERED that defendant's motion to strike plaintiff's expert witness designation is denied as moot.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of plaintiff and intervenors and against defendant on plaintiff's declaratory judgment action and that the Court declares the following consistent with the attached memorandum:
1. During the period April 13, 1985 through April 13, 1986, the limits of directors' and officers' liability coverage provided to Community Federal Savings and Loan Association, St. Louis, Missouri, by defendant American Casualty Company of Reading, Pennsylvania, under Policy No. 00041 DA01 was $10 million each loss, $10 million aggregate limit of liability each policy year for each director and officer for the reasons stated in the attached memorandum filed herein on this date.
2. On April 11, 1986, Community Federal Savings and Loan Association, St. Louis, Missouri, for itself and on behalf of its directors and officers, provided defendant American Casualty Company of Reading, Pennsylvania, with written notice of claims. The said notice was received by defendant on April 11, 1986, and attached to coverage available to Community Federal as of that date.
3. The April 11, 1986 notice constituted legally sufficient notice of claims later asserted by the Resolution Trust Corporation in Cause No. 4:93CV2613 JCH, currently pending in the United States District Court for the Eastern Division of the Eastern District of Missouri.
NOTES
[1] The April 11, 1986 letter states:

This letter is being written by Community Federal Savings and Loan Association on behalf of all the insureds under the above policy. In that same capacity, by letter dated November 5, 1985 pursuant to Sections 2. and 6. of the above policy, I notified you of a potential claim. A copy of the letter is enclosed.
This letter is to reconfirm the existence of that potential claim and to further notify you that the possibility of that claim or other claims by the regulators on the same or other facts still exists.
If you need further information, please contact us. Also, our general counsel, Mr. Robert Hickel, is available to discuss this matter with you.
(Def.'s Exh. S.)
[2] In Federal Savings & Loan Insurance Corporation v. Heidrick, 774 F.Supp. 352 (D.Md.), on reconsideration 812 F.Supp. 586 (D.Md.1991), aff'd sub nom. Federal Deposit Ins. Co. v. American Cas. Co., 995 F.2d 471 (4th Cir.1993), the court reached a similar conclusion regarding identical policy language. In that case, the insured sent a letter to the insurer with very few specifics. Id. at 354-55. The court found that the letter satisfied the notice provisions of the policy and noted that: "It would be impracticable, indeed, unreasonable, to require that plaintiffs give highly detailed accounts of the occurrences which may give rise to claims when those claims have not yet even been made." Id. at 358.